UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. S4-4:15-CR-00404-HEA (NAB) |
| vs. | ) | |
| | ) | ***This Is a Capital Case*** |
| ANTHONY JORDAN (3), et al., | ) | |
| | ) | |
| Defendant. | ) | |

## MOTION TO COMPEL PRE-AUTHORIZATION DISCOVERY

COMES NOW defendant, Anthony Jordan, by undersigned counsel, and moves this Court, under Rules 2, 16 and 26.2 of the Federal Rules of Criminal Procedure, the Guidelines for the Administration of the Criminal Justice Act, § 6.04, and the Fifth, Sixth and Eighth Amendments to the United States Constitution, for an order compelling the government to provide expedited pre-authorization discovery.  In support of this motion, defendant states as follows:

On February 17, 2017, defense counsel electronically filed and served upon the government a discovery request (Doc. 877) seeking the following materials, all of which are relevant and necessary for the preparation of their anticipated presentation before the Capital Review Committee.

    a.    **Forensic Evidence.**   Any and all reports, state or federal, pertaining to forensic evidence related to the homicides charged in Counts 5, 7, 8, 9, and 56, including ballistics tests, fingerprint comparisons, and DNA analysis;

    b.    **Jailhouse Recordings.**   Any and all audio recordings of Jordan's telephone calls made from any of the jails where he has been detained since his arrest on the original indictment;

  c.  ***Brady* and *Giglio* Evidence.** Any and all investigative reports, state or federal, relating to cooperating witnesses, including their involvement in any homicides, including those charged in the fourth superseding indictment, or other violent acts as well as specific information as to any and all deals made with the government in exchange for their cooperation and/or testimony in this or any other case;

  d.  **Victims' Criminal Activity.** Any and all investigative reports, state or federal, or information in the possession of government agencies that any of the victims of the homicides charged in the fourth superseding indictment engaged in criminal activity related to said offenses.

  e.  **Additional Uncharged Homicides.** Any and all investigative reports, state or federal, pertaining to any other uncharged homicides or violent acts allegedly committed by Jordan that the government intends to include in its death penalty submission to the Capital Review Committee; and

  f.  **Alleged Criminal Activity While Detained.** Any and all investigative reports, state or federal, relating to any criminal activity allegedly committed by Jordan during his confinement awaiting trial in this case.

The government responded to the February 17, 2017 request by producing the jailhouse recordings; providing bare-bones incident reports pertaining to a 2008 triple homicide, and a 2014 homicide; and producing a report from the St. Clair County Jail regarding an alleged monetary offer made to a guard.  The government has not provided defense counsel with any of the other information requested.  Nor has the government provided counsel with the applicable threshold

intent factors under 18 U.S.C. § 3591, or the applicable statutory aggravating factors under 18 U.S.C. § 3592(b)-(d).

### Pre-Authorization Discovery Is Essential to Provide Jordan a Meaningful Opportunity to Convince the Local United States Attorney or Capital Review Committee That the Death Penalty Should Not Be Authorized

Chapter 9 - 10.000 of the United States Attorneys' Manual "sets forth the policies and procedures for all Federal cases in which a defendant is charged or could be charged with an offense subject to the death penalty."  United States Attorneys' Manual, updated April 2014.[1]  In a non-expedited case in which the government is contemplating requesting authorization to seek the death penalty, the local "United States Attorney or Assistant Attorney General shall give counsel for the defendant a reasonable opportunity to present information . . . which may bear on the decision whether to seek the death penalty."  USAM, Section 9 – 10.080.  Thereafter, the United States Attorney shall submit a memorandum to the Assistant Attorney General for the Criminal Division identifying "applicable threshold intent factors under 18 U.S.C. Section 3591, applicable statutory aggravating factors under the subsections of 18 U.S.C. Section 3592(b)-(d), and applicable mitigating factors under 18 U.S.C. Section 3592(a)."  The memorandum shall include the local United States Attorney's conclusion on whether all the aggravating factor(s) sufficiently outweigh all the mitigating factor(s) to justify a sentence of death, or whether the aggravating factor(s) alone are sufficient to justify a sentence of death.  USAM, 9 – 10.080(A)(4).  The United States Attorney's submission shall include "any documents or materials provided by defense counsel" in opposition to the authorization of the death penalty."  USAM, 9 – 10.080(F).

---

[1]The official version can be located  on the DOJ website at:
 http://www.justice.gov/usao/eousa/foia_reading_room/usam/title9/10mcrm.htm.

3

Upon receipt of the government's memorandum, the Capital Review Committee shall schedule a meeting with defense counsel and representatives of the local United States Attorney's Office to consider the case, and decide whether to authorize the death penalty.  USAM,  9 – 10.130.  "No final decision to seek the death penalty shall be made if defense counsel has not been afforded an opportunity to present evidence and argument in mitigation."  *Id*., ¶ 1.

The importance of the death penalty authorization process is emphasized in the May 1998 report of the Subcommittee of the Judicial Conference of the United States.  The report, entitled *Federal Death Penalty Cases: Recommendations Concerning the Cost and Quality of Defense Representation*,[2] provides that:

> [T]he authorization process creates [a] forum in which defense counsel must advocate on behalf of the client facing a possible death sentence.  One of defense counsel's most important functions is to present information first to the local United States Attorney and then to the Justice Department that would justify a lesser sentence.  Effective advocacy requires counsel to explore all of the issues that are likely to enter into the Attorney General's decision whether to authorize a federal death penalty prosecution, including the nature and strength of the federal interest, the evidence of guilt, and the aggravating and mitigating factors.  Although the written and oral presentations made to the Death Penalty Review Committee are not as detailed or comprehensive as a penalty phase presentation to a jury, counsel must conduct a wide-ranging preliminary investigation of facts relevant to sentencing *before* the Justice Department makes the decision whether to file a notice seeking the death penalty, if it is to have an effect on the authorization process.

Spencer Report, at Analysis and Findings, Section A 6, *Effect of the Authorization Process*.

> "Defense counsel must be given "a 'reasonable opportunity to present **any fact**, including mitigating factors, to the United States Attorney for consideration.'" *United States v. Pena-Gonzalez*, 62 F. Supp. 2d 358, 361 (D.P.R. 358, 361 (D.P.R. 1999) (quoting January 27, 1996 Memorandum from Janet Reno, P B, Federal Prosecution in which the Death Penalty May be sought).  As we previously held in *Pena-Gonzalez*, "[A] capital punishment certification hearing is a 'critical' stage of a criminal proceeding where the 'substantial rights of a criminal accused may be

---

[2]Available at http://www.uscourts.gov/publications.html.

4

affected.'" 62 F. Supp. 2d at 363 (quoting *Mempa v. Rhay*, 389 U.S. 123, 134, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967)). We found that this hearing "is of paramount importance in a capital case . . . [which] can literally lead to a determination of life or death" and as such, determined that the Sixth Amendment right to counsel attaches at a death penalty certification hearing. *Id*. at 363-364.

*United States v. Gomez-Alemda*, 296 F.Supp.2d 71, 87-88 (D.P.R. 2003) (citing *United States v. Pena-Gonzalez*, 62 F.Supp.2d 358, 361 (D.P.R. 1999)) (emphasis added).

"The exigencies of capital litigation compel, as a practical matter, prompt disclosure of all information which will affect the choice of penalty." *United States v. Diaz*, No. 05 CR 0167, 2005 WL 1575191, at 10-11 (N.D. Cal. June 30, 2005). "Several district courts have allowed discovery before the government has made a final decision regarding whether to seek the death penalty; *i.e.*, pre-authorization discovery," *United States v. Delatorre*, 438 F.Supp.2d 892, 900 (N.D. Ill., 2006). *See also United States v. Gomez-Olmeda*, 296 F.Supp.2d 71, 89 (D.P.R. 2003) (death penalty notice stricken, in part because government did not provide discovery prior to the certification hearing; "[h]ad the government timely provided such discovery as required, Defense Counsel would have been able to use the sought materials in preparation for and during the death penalty certification meeting.  Defense Counsel's representation before the Review Committee on Capital Cases was, therefore, severely compromised, putting his client at a grave disadvantage"); *United States v. Karake*, 281 F.Supp.2d 302, 306 (D.D.C. 2003) ("The Government wisely does not contest the application of *Brady* at this stage of the proceedings to the statutory mitigating factors"); *United States v. Jackson*, 2003 WL 22023972 *2 (S.D.N.Y. 2003) ("Here, the *Brady* issue must be resolved in the *sui generis* context of a case in which the government may seek the death penalty against defendants . . . In these circumstances, penalty determination relevant materials within the scope of *Brady v. Maryland*, and its progeny, must be produced in time to be used in defense counsels'

5

argumentation against pursuit of the death penalty to both the United States Attorney and the Department of Justice"); *accord United States v. Perez*, 222 F.Supp.2d 164 167-70 (D.Conn. 2002) (same).

This Court has the inherent authority to grant pre-authorization discovery as part of its broad discretion to regulate discovery.  "There is universal acceptance in the federal courts that . . . a district court has the authority to enter pretrial case management and discovery orders designed to ensure that the relevant issues to be tried are identified, that the parties have an opportunity to engage in appropriate discovery, and that the parties are adequately and timely prepared so that trial can proceed efficiently and intelligibly."  *United States v. W.R. Grace*, 526 F.3d 499, 508-10 (9th Cir. 2008) (en banc).

In *W.R. Grace*, the Ninth Circuit overruled earlier precedent and concluded that a district court did not abuse its discretion in requiring the government to disclose its final list of witnesses a year before trial.  The *en banc* panel held that "a district court, consistent with Rule 16 and Rule 2 and as part of the court's inherent authority to manage its docket, may in appropriate circumstances require the government to disclose a final list of its proposed trial witnesses and has the authority to enforce such an order."  *Id*. at 513.  The panel also concluded that an order requiring the production of a final witness list a full year before trial was justified because of the complexity of the case:

> The record reflects that the court had good reason to impose such a deadline . . . ; the court believed that the deadline would bring the necessary focus and organization to ready the case for trial.  The charged conspiracy reaches back nearly 30 years, the government now proposes to call more than 200 witnesses, there are many defendants and allegations, and millions of pages of documents have been produced during discovery.  Such a complex case poses special challenges to the parties in preparing for trial and to the court in managing the litigation.

*Id*. at 513-514.

Mr. Jordan's counsel have recently been invited to Washington, D.C. to give a presentation before the Capital Crimes Review Committee.  This is a critical stage of the proceeding where counsel must marshal all their resources in an attempt to convince the Department of Justice not to authorize the death penalty.  Defense counsel's presentation to the Department of Justice must necessarily take into account any cooperating defendants/witnesses' role in the offense(s), and the concessions granted in exchange for their testimony; the role the victim(s) may have played in the criminal activity related to the offense; and the aggravating and mitigating factors at issue.  Due process requires that Jordan be provided with all relevant discovery prior to the authorization hearing.  This discovery should include all unredacted reports pertaining to the death eligible offenses charged in the fourth superseding indictment, including witness statements, the *Jencks* Act notwithstanding; any and all investigative reports pertaining to any uncharged homicides and other violent acts included in the government's death penalty submission; all *Brady* information; all *Giglio* information relating to the concessions granted to cooperating witnesses; and all investigative reports pertaining to any uncharged homicides and other violent acts attributed to Jordan and included in the government's death penalty submission.

This is the government's second attempt to obtain authorization to seek the death penalty for Jordan.  The first attempt resulted in an Order not to seek the death penalty.  While the United States Attorney's Manual states that the government's submission is not available to defense counsel, there should be an exception in this case as to the disclosure of the government's initial submission.  Because the information contained in that submission resulted in a not to seek death order, the disclosure of the same is relevant and supportive of Jordan's argument that the death penalty should not be authorized.

7

**Request for Relief**

WHEREFORE, for each and all of the foregoing reasons, Jordan requests that this Court issue its order directing the government to provide the following:

- Any and all supplemental investigative reports (unredacted) pertaining to the homicides charged in the fourth superseding indictment not previously disclosed, including witness statements, as well as any and all investigative reports, state and federal, pertaining to any uncharged homicides and violent acts included in the government's death penalty submission;

- Any and all exculpatory *Brady* material, including evidence related to cooperating witnesses and co-defendants, regarding their involvement in homicides and other violent acts, including those charged in the fourth superseding indictment, as well as specific information as to any and all deals made with the government in exchange for their cooperation or testimony in this or any other case;

- Any and all investigative reports, state or federal, or information in the possession of government agencies that any of the victims of the homicides charged in the fourth superseding indictment engaged in criminal activity related to the charged offenses;

- A list of the homicides and violent acts allegedly committed by Jordan that were contained in the initial authorization request that was denied by the Department of Justice in February, 2016; and

- The applicable threshold intent factors and statutory aggravating factors under 18 U.S.C. §§ 3591 and 3592(b)-(d), respectively, included in the government's death penalty submission.

8

All such information is relevant and necessary for Jordan to respond to the government's death penalty submission and make a meaningful presentation to the Capital Review Committee as to why the death penalty should not be authorized.

Respectfully submitted,

/s/J. William Lucco
J. William Lucco, #1701835IL
224 St. Louis Street
Edwardsville, Illinois 62025
(618) 656-2321
(618) 656-2363 - Facsimile
Email: www.lbtdlaw.com

/s/ Michael J. Gorla
Michael J. Gorla, #26399MO
555 Washington Avenue, Suite 600
St. Louis, Missouri 63101
(314) 621-1617
(314) 621-7448 - Facsimile
Email: mjgorla@msn.com

*Counsel for Anthony Jordan*

## **CERTIFICATION**

Undersigned counsel does hereby certify that the moving party has made a reasonable and good-faith effort to reach an agreement with opposing counsel on the matters set forth in the motion, and that counsel have been unable to resolve the issues presented herein.

/s/ Michael J. Gorla

9

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 5, 2017, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:  Mr. Michael A. Reilly, Mr. Thomas S. Rea, Mr. Steven Casey, and Mr. James E. Delworth, Assistant United States Attorneys, 111 South 10th Street, 20th Floor, St. Louis, Missouri 63102.


/s/ Michael J. Gorla                            

10