UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. S5-4:15 CR 404(3) HEA (NAB) |
| vs. ) | |
| ) | *This is a Capital Case* |
| ANTHONY JORDAN, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE INDICTMENT BASED ON SELECTIVE AND VINDICTIVE PROSECUTION OR IN THE ALTERNATIVE STRIKE THE NOTICE OF INTENT TO SEEK THE DEATH PENALTY OR PROVIDE THE DEFENDANT WITH ADDITIONAL DISCOVERY REGARDING THE DECISION TO SEEK THE DEATH PENALTY**

Selective prosecution claims should be judged "according to ordinary equal protection standards," which require a showing that the prosecution "had a discriminatory effect and that it was motivated by a discriminatory purpose." *Wayte v. United States*, 470 U.S. 598, 608 (1985). A defendant asserting a claim of selective prosecution must demonstrate both "that he has been singled out for prosecution while others similarly situated have not been prosecuted for similar conduct" and "that the government's action in thus singling him out was based on an impermissible motive," such as race, religion, or the exercise of a constitutional right. *United States v. Leathers*, 354 F.3d 955, 963 (8th Cir. 2004) (citation omitted). A selective-prosecution claim "is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *United States v. Armstrong*, 517 U.S. 456, 463 (1996).

Similarly, vindictive prosecution claims arise "when a prosecutor seeks to punish a defendant solely for exercising a valid legal right," thereby violating due process. *United States v. Williams*, 973 F.3d 957, 963 (8th Cir. 2015); *Leathers*, 354 U.S. 961. Prosecutorial vindictiveness can be demonstrated through objective evidence "of the prosecutor's vindictive or improper motive in increasing the number or severity of charges" or, in rare cases, by establishing a "presumption of vindictiveness" based upon evidence showing that "a reasonable likelihood of vindictiveness exists." *Williams*, 973 F.3d at 963. In determining whether a defendant is entitled to a presumption of vindictiveness, the Court must evaluate the prosecutor's actions "in the context of the entire proceedings." *Id.* (quoting *United States v. Chappell*, 779 F.3d 872, 879 (8th Cir. 2015)).

In the instant matter, the Government decision to seek the death penalty against Mr. Jordan bears hallmarks which have been identified by courts as indicators of selective and vindictive prosecutions. Specifically, as outlined in further detail below, over the course of three years and four months, the Government filed six indictments adding charges against Mr. Jordan as it became apparent that he intended to proceed to trial. Although the facts relating to the offenses charged were known to the Government from early on, the Government chose to stagger the superseding indictments in such a manner as to escalate pressure on Mr. Jordan to plead guilty. This tactic ultimately culminated with the filing of the decision to seek the death penalty after previously having declined to seek the ultimate punishment.

Furthermore, despite the fact that several co-defendants were charged alongside Mr. Jordan with the identical alleged death eligible acts, the Government declined to seek the death penalty against them. In fact, the Government declined to charge another alleged co-conspirator all together with any death eligible offenses. Instead that alleged co-conspirator was charged

separately with one count of possession of a weapon in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c) and ultimately sentenced to 60 months imprisonment.

This prosecution began on August 27, 2015, when Anthony Jordan was arrested in connection with the original indictment, which had been filed the day before.  *See United States v. Anthony Jordan,* Criminal Number 4:15-CR-00404-HEAD-NAB-3 Docket Sheet at Entry #1 (Indictment) and Second Unnumbered Entry dated 8/27/15 (Arrest).  The original indictment consisted of three counts which charged only Mr. Jordan with possession with the intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 846 (Count One); and two counts of possession, brandishing and discharging a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. §§ 924(c)(1)A) and 924(j)(1) (Counts Two and Three).  The last two counts referenced a penalty provision which carried the possibility of the death penalty.

The allegations in Count One alleged involvement in a drug conspiracy which allegedly began when Mr. Jordan was 15 years old.  The allegations in Counts Two and Three stemmed from the murders of Robert "Parker G" Parker and Clara Walker on December 29, 2013, and Mikhail "Yellow Mack" Gridiron on January 21, 2014, respectively.  A superseding indictment was filed on January 7, 2016, which added seventeen defendants in addition to Mr. Jordan.  *Id.* at Entry #34.  One death eligible offense charging Mr. Jordan was added.

Four death eligible defendants were listed in the indictment in addition to Mr. Jordan. Jose Alfredo Velazquez was charged with a death eligible offense in Count One of the superseding indictment alleged his participation in a continuing criminal enterprise in violation of 21 U.S.C §§ 848(a), 848(c), 848(e) and 18 U.S.C. § 2.  Adrian Lemons was also charged in Count One with the offenses described above.  In addition, he was charged with two other capital

offenses along with Mr. Jordan in Count Five and Count Six in relation with their alleged involvement in the murder of Byron Earts on December 5, 2013.  Maurice Woodson was also charged in Count Six with a death eligible offense together with Mr. Lemons and Mr. Jordan.  Gloria Ward was charged in Count Eight with a death eligible offense together with Mr. Jordan in connection with her alleged involvement with the murder of Mikhail "Yellow Mack" Gridiron.

A second superseding indictment was filed on February 18, 2016, which added three non-capital defendants.  *Id.* at Entry #244.  A third superseding indictment was filed on April 14, 2016, which added six non-capital defendants, and added a death eligible offense to Mr. Jordan and a previously charged defendant.  *Id.* at Entry #391.  Specifically, Mr. Jordan and Derrick Terry were charged in Count 5 with their alleged involvement in the murder of Anthony "Blinky" Clark.  On June 10, 2016, the Government filed a notice with the Court indicating that the decision whether to seek the death penalty against Mr. Jordan, Adrian Lemons, Derrick Terry, Maurice Woodson, and Gloria Ward remained under advisement.  *Id.* at Entry #540.

A fourth superseding indictment was filed on December 1, 2016, which added six non-capital defendants, one death eligible defendant and added a death eligible count to four previously charged defendants.  *Id.* at Entry #679.  Adrian Lemons, Maurice Woodson and Virgil Sims were charged in Count 19 with their alleged involvement in a continuing criminal enterprise which, as one of the alleged predicate acts, carried out the murder of William "Lil Will" Thomas.  Gloria Ward was charged in Count Five with her alleged involvement in the Anthony "Blinky" Clark murder, and in Count Eight with her alleged involvement in the Robert "Parker G" Parker and Clara Walker murders.  Derrick Terry and Mr. Jordan were charged in Count Fifty-Six with their alleged involvement in the murders of Keairrah Johnson and Marquis

Jones.  Charles Thompson was charged along with Mr. Jordan and Gloria Ward in Counts Eight in connection with their alleged involvement in the Robert "Parker G" Parker and Clara Walker murders, and in Count Nine in connection with their alleged involvement in the Mikhail "Yellow Mack" Gridiron murder.

In February 2016, the Government orally notified the Court and defense counsel that the United States Department of Justice had decided against seeking the death penalty against Mr. Jordan.  On March 30, 2017, newly appointed Attorney General Jefferson Beauregard Sessions traveled to St. Louis, Missouri and participated in a press conference during which he specifically referenced the murder of Clara Walker.  *See Sessions Vows to Fight Violent Crime and Heroin in St. Louis Speech*, fox2now.com, https://fox2now.com/2017/03/31/attorney-general-sessions-to-speak-in-st-louis-friday/ (last visited Oct. 21, 2019).  In the wake of this visit, the Government embarked on a heretofore-unprecedented endeavor to revisit the decision not to seek the death penalty against Mr. Jordan.

On October 16, 2017, the Government filed a notice informing the Court of its decision not to seek the death penalty against defendants Adrian Lemons (charged with four death eligible offenses), Derrick Terry (charged with two death eligible offenses), Maurice Woodson (charged with three death eligible offenses), Gloria Ward (charged in three death eligible offenses), Virgil Sims (charged in one death eligible offense) and Charles Thompson (charged in two death eligible offenses).  *See* Docket Entry #1289. Defendant Jose Alfredo Velasquez entered a guilty plea on December 12, 2018 and is currently pending sentencing.  *Id.* at Entry #1965.  Defendant Adrian Lemons entered a guilty plea on May 3, 2019 and is currently pending sentencing.  *Id.* at Entry #2237.  Defendant Derrick Terry entered a guilty plea on February 26, 2018 and is currently pending sentencing.  *Id.* at Entry #1564.  Defendant Gloria Ward entered a guilty plea

on November 19, 2018 and is currently pending sentencing. *Id.* at Entry #1916. Defendant Virgil Sims entered a guilty plea on May 1, 2019 and was sentenced to 60 months imprisonment on July 30, 2019. *Id.* at Entry #2232 & 2343. Defendant Charles Thompson waived pretrial motions on April 30, 2019. *Id.* at Entry #2227. Defendant Maurice Woodson has until November 13, 2019 to either waive or file pretrial motions. *Id.* at Entry #2370.

In November 2017, counsel for Mr. Jordan participated in a conference with the Assistant United States Attorneys assigned to this matter locally, as well as members of the Department of Justice Capital Case Section. The defense requested time to present additional information on Mr. Jordan's behalf for the Government's consideration. On January 22, 2018, defense counsel for Mr. Jordan traveled to Washington D.C., to meet with the AUSAs and the Capital Case Section. Due to the pendency of additional testing authorized by this Court, defense counsel was provided additional time to present materials to the Government.

In March 2018, allegations of gender bias, sexual harassment and sexual assault within the Capital Case Section came to light through court filings and at least a dozen Equal Employment Opportunity Commission complaints. *See* Katie Benner, *At the Justice Dept.'s Death Penalty Unit, Accusations of Favoritism, Gender Bias and Unwanted Groping*, N.Y. Times, (Mar. 31, 2018), https://www.nytimes.com/2018/03/31/us/politics/justice-department-harassment-bias.html. The complaints directly involved the chief of the Capital Case Section, Kevin Carwile, and Gwynn Kinsey, Mr. Carwile's deputy. *Id.* Both men were demoted and reassigned. *See* Debra Cassens Weiss, *Leader of Justice Department Unit is Demoted After Questions About Bias, 'Sexualized' Workplace*, ABA Journal (April 2, 2018), http://www.abajournal.com/news/article/leader_of_justices_death_penalty_unit_is_demoted_afte

[r_questions_about_sexu](). In the wake of this, defense counsel were asked to return to Washington D.C. to meet with the newly reconstituted Capital Case Section.

On June 11, 2018, defense counsel for Mr. Jordan again traveled to Washington, D.C. to meet with the AUSAs and the new members of the Capital Case Section. Additional materials were presented and discussed. Thereafter, on December 20, 2018, the Government filed a fifth superseding indictment together with a notice of intent to seek the death penalty against Mr. Jordan. *See United States v. Anthony Jordan,* Criminal Number 4:15-CR-00404-HEAD-NAB-3 Docket Sheet at Entry #1988 & 1989. In addition to the acts previously alleged, the fifth superseding indictment added charges relating to Mr. Jordan's alleged involvement in the murders of Al Walters, Linnie Jackson, Keith Burks on April 19, 2008; and Dante Jones on November 28, 2014.

The Government's actions following the decision not to seek the death penalty demonstrate that Mr. Jordan was singled out for prosecution. This is especially apparent where defendants such as Adrian Lemons, Derrick Terry, Gloria Ward, Maurice Woodson, Charles Thompson, who were charged with multiple death eligible offenses, were not capitally authorized. This is also apparent from the decision not to charge others with the same death eligible offenses as Mr. Jordan based on their alleged involvement in those offenses. Moreover, the Government's decision to periodically add charges against Mr. Jordan, and ultimately pursue the death penalty against him demonstrates vindictiveness based on his decision to exercise his constitutionally protected right to proceed to trial.

The Government is forbidden from seeking or threatening to seek a death sentence "solely for the purpose of obtaining a more desirable negotiating decision" with the defendant. United States Attorneys' Manual § 9-10.120. The protocol "contains numerous safeguards"

preventing the process of seeking the death penalty from being arbitrary.  *United States v. Sampson*, 486 F.3d 13, 24 (1st Cir. 2007).  The Government's disregard of this protocol, and its reversal of its initial "no-seek" decision, appear tainted a desire to punish him for not pleading guilty.

The government's reversal, and its ultimate decision to see a death sentence, occurred in a professional atmosphere permeated by favoritism, bias, and sexual misconduct.  See Katie Benner, *At the Justice Department's Death Penalty Unit, Accusations of Favoritism, Gender Bias, and Unwanted Groping*, N.Y. Times, (Mar. 31, 2018) https://www.nytimes.com/2018/03/31/us/politics/justice-department-harassment-bias.html.  Notwithstanding the anti-arbitrariness safeguards of the DOJ Manual, then-Attorney-General Sessions singled out Mr. Jordan, while ignoring the co-defendants charged and/or allegedly implicated in the identical conduct he is alleged to have committed.  Attorney General Sessions' statements in St. Louis clearly demonstrate this vendetta, and further illustrate that it may have permeated the decision-making process within the Death Penalty Unit.

Indeed, Attorney General Sessions' March 2017 statements suggest that any subsequent review by the Death Penalty Unit of Mr. Jordan's case provided only *pro forma* due process, rather than the anti-arbitrariness due process protections ensured by the DOJ Manual.  These circumstances shed light on the constitutionally impermissible motive that led to the Government's authorization of the case against Mr. Jordan as a capital prosecution.  *See Leathers*, 354 F.3d at 963.  They also entitle Mr. Jordan to a presumption that the Government's pursuit of a capital prosecution against him is vindictive.  *See Williams*, 973 F.3d at 963.

As such, this Court should dismiss the indictment or, in the alternative, strike the notice of intent to seek the death penalty.  As a final alternative relief, this Court should order the

Government to provide defense counsel with additional discovery regarding the Department of Justice's decision to seek the death penalty against Mr. Jordan and the decision not to seek the death penalty against the other death eligible defendants.

WHEREFORE, Mr. Jordan respectfully requests that this Court dismiss the indictment based on selective and vindictive prosecution or in the alternative strike the notice of intent to seek the death penalty or provide the defendant with additional discovery regarding the decision to seek the death penalty.

| | Respectfully submitted, |
|---|---|
| /s/ J. William Lucco | /s/ Michael J. Gorla |
| J. William Lucco, #01701835IL | Michael J. Gorla, #26399MO |
| Lucco, Brown, Threlkeld & Dawson, LLP | 555 Washington Avenue, Suite 600 |
| 224 St. Louis Street | St. Louis, Missouri 63101 |
| Edwardsville, Illinois 62025 | (314) 621-1617 |
| (618) 656-2321 | (314) 621-7448 - Facsimile |
| (618) 656-2363 - Facsimile | Email: mjgorla@msn.com |
| Email: blucco@lbtlaw.com | |
| | |
| /s/ Maria A. Pedraza | /s/James J. McHugh, Jr. |
| Maria A. Pedraza, #317458PA | James J. McHugh, Jr., #48308PA |
| Federal Community Defender for the | Federal Community Defender for the |
| Eastern District of Pennsylvania | Eastern District of Pennsylvania |
| 601 Walnut Street, Suite 540W | 601 Walnut Street, Suite 540W |
| Philadelphia, PA 19106 | Philadelphia, PA 19106 |
| (215) 928-1100 | (215) 928-1100 |
| (215) 928-1112 Facsimile | (215) 928-1112 Facsimile |
| Email: maria_pedraza@fd.org | Email: james_mchugh@fd.org |

/s/Hunter S. Labovitz
Hunter S. Labovitz, #204760PA
Federal Community Defender for the
Eastern District of Pennsylvania
601 Walnut Street, Suite 540W
Philadelphia, PA 19106
(215) 928-1100
(215) 928-1112 Facsimile
Email: hunter_s_labovitz@fd.org
*Counsel for Defendant Anthony Jordan*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 21, 2019, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following: Mr. Michael A. Reilly, Mr. Thomas S. Rea, Ms. Erin Granger, and Ms. Sonia Jimenez, Assistant United States Attorneys, 111 South 10th Street, 20th Floor, St. Louis, Missouri 63102.

/s/ Michael J. Gorla
/s/ J. William Lucco
/s/ Maria A. Pedraza
/s/ James J. McHugh, Jr.
/s/ Hunter S. Labovitz
*Attorneys for Anthony Jordan*