**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. S5-4:15 CR 404(3) HEA (NAB) |
| vs. ) | |
| ) | *This is a Capital Case* |
| ANTHONY JORDAN, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT ANTHONY JORDAN'S REPLY IN SUPPORT OF
MOTION TO STRIKE OR MODIFY CERTAIN AGGRAVATING FACTORS
BECAUSE OF FACTUAL DEFICIENCIES
AND FOR OTHER MISCELLANEOUS RELIEF**

Defendant Anthony Jordan, through counsel, replies to the Government's response, ECF No. 2450, to his *Motion to Strike or Modify Certain Aggravating Factors Because of Factual Deficiencies and for Other Miscellaneous Relief*, ECF No. 2418. The Government's *Notice of Intent to Seek the Death Penalty*, ECF No. 1988, and its *Notice Summarizing Evidence in Support of Aggravating Factors*, filed under seal on September 9, 2019, raise numerous factual concerns about the Government's noticed aggravating factors that this Court is empowered to address to ensure full protection of Mr. Jordan's rights in this capital case. *Cf.* ECF No. 2466 (Mr. Jordan's *Notice of Constitutionally Required Safeguards and Heightened Protections in Capital Cases*). The Government's response does not alleviate those concerns but rather shows the need for the Court to conduct careful oversight of the Government's proposed penalty phase evidence. Therefore, the Court should grant Mr. Jordan's request for adequate notice followed by a reliability hearing to ensure that any sentencing jury only hears evidence that has an "indicia of reliability." *United States v. Coonce*, 932 F.3d 623 (8th Cir. 2019).

Because of the nexus between this Motion and Mr. Jordan's *Motion to Strike the Government's Notice of Intent to Seek Death Penalty, or in the Alternative, to Strike Certain Aggravating Factors*, ECF No. 2306, the Memorandum of Law in Support of that Motion, ECF No. 2308, and Mr. Jordan's Reply, ECF No. 2384, Mr. Jordan incorporates those pleadings here. And, to avoid repeating arguments made in those pleadings as well as this Motion accompanying Memorandum of Law, ECF Nos. 2418 and 2419, Mr. Jordan concentrates this Reply on addressing general principles the Government raised in its Response as well as one specific non-statutory aggravating circumstance.

I. **Trial counsel's duty to investigate the circumstances surrounding the Government's noticed aggravating circumstances requires that the Government provide additional information.**

The Government asserts that Mr. Jordan is not entitled to any additional evidentiary detail concerning the noticed aggravating circumstances. ECF No. 2450 at 2-8. Mr. Jordan relies on the arguments made in prior pleadings, ECF Nos. 2306, 2308, 2418, 2419, and 2384, as to why the notice to date is insufficient. Also, trial counsel must investigate the circumstances of the noticed aggravators to determine whether to move to exclude them if possible, or at a minimum to rebut them at any sentencing hearing. *See Rompilla v. Beard*, 545 U.S. 374, 385 (2005). *Cf. American Bar Association Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases*, Guideline 10.11 (rev. ed. 2003), *reprinted in* 31 HOFSTRA L. REV. 913 (2003). To make those arguments, counsel needs the adequate detail previously requested.

II. **The Court must act as a gatekeeper to protect Mr. Jordan's rights.**

The Government asserts that its penalty phase evidence should only be tested by the jury, ECF No. 2450 at 9-10, 17-20. But, the Supreme Court has "consistently required that capital proceedings be policed at all stages by an especially vigilant concern for procedural fairness and

for the accuracy of fact finding." *Strickland v. Washington*, 466 U.S. 668, 704 (1984). And, a defendant may not be sentenced based on "misinformation of constitutional magnitude." *United States v. Turner*, 404 U.S. 443, 447 (1972). So, the Court must act as a gatekeeper to ensure that a death sentence, if the case reaches the capital penalty stage, not be imposed out of whim, passion, prejudice or mistake. *Eddings v. Oklahoma*, 455 U.S. 104, 118 (1982). This vigilance necessary to protect Mr. Jordan's constitutional rights, as well as the need to be cautious to avoid making a fatal mistake, requires the Court to resolve any doubts in Mr. Jordan's favor. *Cf.* ECF No. 2466 at 8-9. And this vigilance required of capital sentencing proceedings distinguishes the Government's attempts to equate the capital penalty phase with standard guilt phase process. ECF No. 2450 at 9-10.

**III.    The Government's penalty phase evidence must be reliable.**

In asserting that its penalty evidence need not meet a reliability standard, ECF No. 2450 at 2, 18, the Government relies on numerous non-capital cases, ECF No. 2450 at 7 (*United States v. Livingstone*), *id.* at 17 (*United States v. Ferro* and *United States v. Nabors*), *id.* at 18 (*United States v. Alfonso* and *United States v. Guerrier*), while ignoring the text of the Federal Death Penalty Act ("FDPA"), Eighth Circuit guidance, and controlling capital cases, all of which support that any proposed aggravating factor and/or its subparts is invalid and cannot be introduced at a capital sentencing hearing if the Government cannot first establish the aggravator and/or subpart by reliable evidence.

The FDPA itself demonstrates the need for reliability and accuracy in capital decision-making. Under the FDPA, the Court must exclude evidence if it confuses the issues, its probative value is outweighed by the danger of creating unfair prejudice or it misleads the jury. *See* 18 U.S.C. § 3593(c). The FDPA's relevancy standard actually excludes a greater amount of

3

prejudicial information than the analogous provision in the Federal Rules of Evidence, which only authorizes a court to exclude evidence if the potential prejudicial impact "substantially outweigh[s]" its probative value. Fed. R. Evid. 403. *See*, *e.g.*, *United States v. Chong*, 98 F. Supp. 2d 1110, 1115 (D. Haw. 1999) (comparing FDPA to FRE and concluding that there is a "heightened reliability standard incorporated in the Federal Death Penalty Act."). *Cf. United States v. Purkey*, 428 F.3d 738, 758-59 (8th Cir. 2005) (noting different evidentiary standard between Fed. R. Evid. 403 and FPDA). This constraint helps ensure the reliability of the Government's evidence.

Additionally, the Eighth Circuit pattern jury instruction for death penalty cases that addresses non-statutory aggravating circumstances highlights a case striking an aggravator because it was unreliable. *See* Eight Circuit Model Death Penalty Jury Instruction, Instruction 12.08 - Nonstatutory Aggravating Factors, Notes on Use ("In *United States v. Friend*, 92 F. Supp.2d 534, 537, 545 (E.D. Va. 2000), the court struck the nonstatutory aggravating factor that defendant discussed killing a potential witness after the murder of the victim because it did not meet the relevance and heightened reliability standards required under the FDPA and the Supreme Court's death penalty jurisprudence."). *Friend* noted that "fundamental, constitutional principles demand[] a heightened reliability in capital sentencing because the sentence of death is final, and therefore qualitatively different from other punishments." *Friend*, 92 F. Supp. 2d at 538 & n.5 (collecting cases).

Also, the Eighth Circuit recently held in *United States v. Coonce*, 932 F.3d 623 (8th Cir. 2019), that the "indicia of reliability" standard applies to a capital sentencing proceeding. *Id.* at 641 (relying on *United States v. Fields*, 483 F.3d 313 (5th Cir. 2007)). *Coonce* is controlling here and rebuts the Government's reliance on Fifth Circuit cases, including *Fields*. *See* ECF No. 2450

4

at 9. Indeed, the Government selectively quotes from the non-controlling Fifth Circuit case *Fields* and omits that *Fields* held that "[e]videntiary reliability surely *is* important at capital sentencing, just as it is at noncapital sentencing." *Fields*, 483 F.3d at 337 (emphasis in original). And *Fields* cites both the FDPA case *United States v. Jones,* 132 F.3d 232 (5th Cir.1998), *aff'd,* 527 U.S. 373 (1999), and the federal sentencing guidelines to support that sentencing hearing information is limited by the caveat that the evidence be reliable. *See Fields*, 483 F.3d at 337 n.23 (citing *Jones* at 241 and U.S.S.G. § 6A.1.3 (considering only sentencing evidence that providing that "has sufficient indicia of reliability to support its probable accuracy")). This is consistent with the Eighth's Circuit recent decision in *Coonce*.

Further, the Supreme Court has stated that "[b]ecause of [the] qualitative difference [between death and imprisonment], there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment *in a specific case*." *Woodson v. North Carolina,* 428 U.S. 280, 305, (1976). This refutes the Government's repeated claim that a reliability standard does not apply to specific cases. ECF No. 2450 at 2, 8-9.

**IV.     As other courts have done in FDPA cases, this Court has the power to test the Government's penalty phase evidence for reliability before it can be presented to a sentencing jury.**

The Government argues that the Court is not required to ensure the reliability of the Government's penalty phase evidence. ECF No. 2450 at 2, 8-9. But, the Court has the power – even if it is not required – to ensure the reliability of the Government's factual allegations, particularly for non-statutory aggravating circumstances, which Congress has not endorsed.

In *United States v. Purkey*, 428 F.3d 738 (8th Cir. 2005), the Eighth Circuit held that "[t]he FDPA, moreover, invests the judge with the authority to exclude probative information

5

during the penalty phase if 'its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury.'" *Id.* at 756 (quoting 18 U.S.C. § 3593(c)).

Applying this principle, courts in FDPA cases have routinely approved reliability hearings to determine whether the evidence the Government seeks to introduce in the penalty phase has sufficient "indicia of reliability." *See*, *e.g.*, *United States v. Fell*, 737 Fed. Appx. 37, 40-41 (2d Cir. 2018) (unpublished) (holding that deceased codefendant's statements to police about the defendant's role in three charged murders were not sufficiently reliable for the government to introduce them at the capital-sentencing hearing. The court cited the facts that (1) the codefendant was in custody and had a strong incentive to lie, (2) the codefendant admitted his involvement but shifted blame to the defendant in important ways, (3) the codefendant had a well-documented history of shifting blame to others, and (4) the aspects of the codefendant's statements that were critical to several aggravators were also uncorroborated by other evidence); *United States v. Corley*, 519 F.3d 716, 724 (7th Cir. 2008) (approving district court's decision to conduct a two-day hearing "to determine the reliability of the evidence" that the defendant committed an uncharged murder the Government wanted to introduce in the penalty phase to support the future dangerousness non-statutory aggravating factor); *United States v. Basciano*, 763 F.Supp.2d 303, 357 (E.D.N.Y. 2011) ("Should a penalty phase be necessary, the Government will be required to submit an affirmation to the court detailing the specific offenses it intends to present to the jury, including the expected testimony and evidence that will prove this uncharged conduct, so that the court may assess the reliability and sufficiency of this evidence."); *United States v. Concepcion Sablan*, 555 F. Supp. 2d 1177, 1187 (D. Col. 2006) (scheduling hearing on admissibility of evidence of threats of violence); *United States v. Davis*,

6

912 F.Supp. 938, 949 (E. D. La. 1996) (ordering a pretrial hearing on the admissibility of information the Government intended to introduce in support of the nonstatutory aggravating factors in order "to assess the reliability of the evidence; and . . . to evaluate the time and complexity involved in its presentation.").

That courts in FDPA cases routinely review the Government's penalty phase evidence before submission to the sentencing jury refutes the Government's claim that "the Court has no more authority to preview penalty phase evidence than guilt phase evidence." ECF No. 2450 at 9.

And following those hearings, courts have limited the Government's aggravating evidence because of reliability concerns. *See*, *e.g.*, *United States v. Gonzalez*, No. 3:02-cr-7, 2004 WL 1920492, at *1-2, 7-8 (D. Conn. Aug. 17, 2004) (unpublished) (striking four uncharged murders because probative value outweighed by danger of unfair prejudice where the underlying facts of the crimes were inflammatory, the crimes were based on fact patterns similar to the capital charge, and the evidence for them came primarily from accomplices and cooperators); *United States v. Gilbert*, 120 F. Supp. 2d 147 (D. Mass. 2000) (striking two unadjudicated assaults based on stale and questionable evidence); *Friend*, 92 F. Supp. 2d at 535-36, 545 (striking non-statutory aggravating factor that defendant discussed killing potential witness because lacked sufficient relevance and reliability).

**V.     Before the trial, the Court should conduct a reliability hearing, particularly for the uncharged crimes of violence non-statutory aggravator.**

The Court should conduct a reliability hearing on the Government's proposed aggravating factors prior to trial because the ultimate contours of the Government's penalty phase evidence are relevant to Mr. Jordan's voir dire questioning. If the hearing is not held pre-trial, then Mr. Jordan might have to ask voir dire questions about evidence that the court might

7

later exclude, which would taint the empaneled jurors views of Mr. Jordan. Under the current scheduling order, the Government has agreed to provide *Jencks* material by November 9, 2020, which will give the Court and the parties sufficient time and reason to hold the necessary reliability hearing pre-trial.

**VI.     The Government's non-statutory aggravating circumstance of callous disregard for human life must be assessed with particular caution because it has multiple subparts, including uncharged violent crimes.**

The Government argues that there is no need for a reliability hearing on the callous disregard for human life non-statutory aggravating factor and that the aggravator's subparts need not be proven beyond a reasonable doubt. ECF No. 2450 at 16-17.

But, the primary case the Government relies on is not an FDPA case. In its response, the Government cites to ECF No. 2357 at 45-46, where it discussed *United States v. Beckford*, 964 F. Supp. 993 (E.D. Va. 1997). *Beckford* was a prosecution under the capital provisions of the Anti-Drug Abuse Act, which were repealed in 2006 and which contained a more Government-friendly reliability test than the FDPA. Under then-21 U.S.C. § 848(j), evidence was only excluded if "its probative value is *substantially outweighed* by the danger of unfair prejudice . . . ." 21 U.S.C. § 848(j) (repealed) (emphasis added). *Cf. United States v. Cooper*, 91 F.Supp.2d 90, 98 n. 3 (D.D.C. 2000) ("the ADAA affords capital defendants less protection than the FDPA."). In determining what level of proof to apply, *Beckford* relied upon this rule that is less onerous than the test for admissibility under the FDPA. *See Beckford*, 964 F. Supp.at 1002 (discussing 848(j) standard). *Cf. United States v. Jones*, 132 F.3d 232, 241 n.7 (5th Cir. 1998), *aff'd*, 527 U.S. 373 (1999) ("The relevancy standard enunciated in § 3593(c) actually excludes a greater amount of prejudicial information than the Federal Rules of Evidence because it permits the judge to exclude information where the "probative value is outweighed by the danger of

8

creating unfair prejudice" rather than "substantially outweighed." *See* Fed. R. Evid. 403. *See also* Anti–Drug Abuse Act, 21 U.S.C. § 848(j) (codifying Fed. R. Evid. 403 standard of "substantially outweighs")."). Thus *Beckford's* non-reasonable doubt standard under the ADAA does not affect the standard to be applied under the FDAP, with is qualitatively higher burden.

And *Beckford* also granted the defense a reliability hearing to determine whether the aggravating evidence could be introduced to the jury. *Beckford*, 964 F. Supp. at 1000.

Also, the Government's assertion that subparts of an aggravating factor do not need to be proven beyond a reasonable doubt is particularly circumspect given the broad discretion the Government has in noticing non-statutory aggravators. For instance, nothing prevented the Government from making prior unadjudicated conduct a free-standing aggravator, at which point the FDPA would mandate proof beyond a reasonable doubt. *See* 18 U.S.C.A. § 3593(c) ("The burden of establishing the existence of any aggravating factor is on the government, and is not satisfied unless the existence of such a factor is established beyond a reasonable doubt.").

Indeed, the Government has elected to make uncharged conduct an independent nonstatutory aggravator in another FDPA case in this district. *See United States v. Bolden*, 4:02-CR-557-CEJ (E.D. Mo.), ECF No. 240 at 8-9; *accord United States v. Bolden*, 545 F.3d 609, 624-625 (8th Cir. 2009) (noting that Government offered "evidence of 'other criminal acts' as a non-statutory aggravating factor"). The Government should not be rewarded with a burden below the reasonable doubt standard simply because it exercised its unfettered discretion to compose this aggravator with four subparts instead of noticing the subparts as four separate aggravators. The Government cannot create this artifice and then hide behind it to escape a rigorous and standard burden of proof.

9

In any case, whether as a subpart or a free-standing aggravator, each act of uncharged violent conduct needs to meet the reasonable doubt standard to protect Mr. Jordan's rights. *See Basciano*, 763 F. Supp. at 356 (court "requir[ing] the Government to prove the specific uncharged crimes unanimously and beyond a reasonable doubt, rather than only requiring this standard of proof for the Non–Statutory Aggravating Factor generally" and also requiring that the jury "identify on the special verdict form which crimes have been proven to that standard."); *United States v. Cisneros*, 363 F. Supp. 2d 827, 839 (E.D. Va. 2005) (holding that each instance of unadjudicated conduct offered to support "pattern of criminal activity" non-statutory aggravating factor must be found beyond a reasonable doubt before considering the conduct in determining whether the aggravator itself was satisfied); *United States v. Corley*, 348 F. Supp. 2d 970, 973-74 (N.D. Ind. 2004) (where Government sought to introduce uncharged murder to support future dangerousness non-statutory aggravator, court – at agreement of the defense and the Government – assessed reliability of uncharged murder by considering whether any reasonable jury could find defendant guilty beyond a reasonable doubt).
*Cf. Corley*, 519 F.3d at 724 (holding that, in assessing unadjudicated criminal conduct, a district court "must consider a number of factors, including the reliability of the evidence, the prejudicial and probative impact of the evidence, and the burden of proof both for determining reliability and for a jury to determine whether the conduct may be considered.").

## **CONCLUSION**

The Government's intention to bombard any sentencing jury with 14 separate aggravating circumstances, including some with multiple subparts, will eviscerate any chance of Mr. Jordan having a fair sentencing procedure and lead any sentencing jury to improperly decide Mr. Jordan's sentence based on emotion not evidence. The Court should use its gatekeeping power to strike the aggravators as requested, or at least to hold a hearing on the reliability of the Government's evidence, particularly the uncharged violent crimes. Because the stakes are life and death, this case demands the utmost protection against error.

Respectfully submitted,

/s/ J. William Lucco
J. William Lucco, #01701835IL
Lucco, Brown, Threlkeld & Dawson, LLP
224 St. Louis Street
Edwardsville, Illinois 62025
(618) 656-2321
(618) 656-2363 - Facsimile
Email: blucco@lbtlaw.com

/s/ Michael J. Gorla
Michael J. Gorla, #26399MO
555 Washington Avenue, Ste. 600
St. Louis, Missouri 63101
(314) 621-1617
(314) 621-7448 - Facsimile
Email: mjgorla@msn.com

/s/ Maria A. Pedraza
Maria A. Pedraza, #317458PA
Federal Community Defender for the
Eastern District of Pennsylvania
601 Walnut Street, Suite 540W
Philadelphia, PA 19106
(215) 928-1100
(215) 928-1112 - Facsimile
Email: maria_pedraza@fd.org

/s/James J. McHugh, Jr.
James J. McHugh, Jr., #48308PA
Federal Community Defender for the
Eastern District of Pennsylvania
601 Walnut Street, Suite 540W
Philadelphia, PA 19106
(215) 928-1100
(215) 928-1112 - Facsimile
Email: james_mchugh@fd.org

/s/ Hunter S. Labovitz
Hunter S. Labovitz, #204760PA
Federal Community Defender for the
Eastern District of Pennsylvania
601 Walnut Street, Suite 540W
Philadelphia, PA 19106
(215) 928-1100
Email: hunter_labovitz@fd.org

Dated: December 20, 2019                                   *Counsel for Defendant Anthony Jordan*

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 20, 2019, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

Michael A. Reilly
Thomas S. Rea
Erin O. Granger
Assistant United States Attorneys
111 South 10th Street, 20th Floor
St. Louis, Missouri 63102

Sonia Jimenez
Capital Case Section
United States Department of Justice
950 Pennsylvania Ave NW
Washington, DC 20530

/s/ Michael J. Gorla
/s/ J. William Lucco
/s/ Maria A. Pedraza
/s/ James J. McHugh, Jr.
/s/ Hunter S. Labovitz

*Attorneys for Anthony Jordan*