UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. S5 4:15 CR 404(3) HEA (NAB) |
| v. ) | |
| ) | *This is a Capital Case* |
| ANTHONY JORDAN, ) | |
| ) | |
| Defendant. ) | |

# DEFENDANT'S REPLY TO THE GOVERNMENT'S RESPONSE TO THE MOTION FOR DISCOVERY OF INFORMATION CONCERNING THE CONFECTION OF THE GRAND AND PETIT JURY VENIRE

Anthony Jordan, by and through counsel, J. William Lucco, Michael J. Gorla, Maria A. Pedraza, James J. McHugh, Jr., and Hunter S. Labovitz, respectfully replies to the Government's Response to the Motion for Discovery of Information Concerning the Confection of the Grand and Petit Jury Venire ("Response").

On October 21, 2019, Mr. Jordan filed a Motion for Discovery on Information Concerning the Confection of the Grand and Petit Jury Venire, seeking access to jury selection records and materials pursuant to 18 U.S.C. § 1867(f), the Plan for the United States District Court for the Eastern District of Missouri for the Random Selection of Grand and Petit Jurors (Effective May 1, 2016) ("Jury Plan"), and the Fifth, Sixth, and Eighth, and Fourteenth Amendments (ECF No. 2422).

In its Response, filed on November 21, 2019 (ECF No. 2449), the government agrees that Mr. Jordan is entitled to information regarding the confection of the grand and petit jury venire, *Response* at 5, but objects to the production of certain categories of materials on the grounds that Mr. Jordan has not yet established a violation of the Jury Selection and Service Act ("JSSA"). As

set forth in greater detail below, the government's position contravenes the express language of the JSSA and Supreme Court precedent. Mr. Jordan's request for discovery should be granted.

> **1. Any amendment to the Jury Plan for the Eastern District of Missouri since its promulgation on May 1, 2016, along with any proposed amendment, including proposal by email or otherwise.**

The government agrees that Mr. Jordan is "entitled to copy of the Court's Plan in effect at the time his case was indicted (December 2018) and for the time of his trial." *Response* at 6. For this reason, the government's objection to Mr. Jordan's request for the production of any amendments to the Jury Plan is puzzling, given that these amendments may have been in effect at the time Mr. Jordan was indicted and/or may be in effect at the time of trial. *Id.* at 6. The cases cited by the government do not address this issue, as they concern requests for past jury records as opposed to the contemporary records sought by Mr. Jordan.

> **2. An electronic copy of the "voter registration lists" and "records of licensed drivers and non-driver identification holders" provided to the Clerk of Court that ultimately resulted in the creation of the Master Jury Wheel from which the grand jury in this case was drawn and all attendant/attached information, including but not limited to racial, ethnic, age, voting status; the date those lists were provided to the Clerk of Court; and the agency or person who provided that information.**

The government asserts that Mr. Jordan is not entitled a copy of the voter registrations lists and records of licensed drivers and non-driver identification holders (*i.e.*, "source lists") provided to the Clerk of Court and used in creating the Master Jury Wheel, stating that Mr. Jordan is "not entitled to [this] information . . . in order to determine whether the Court is properly implementing its Plan." *Response* at 7. The government is wrong.

Section 1861 of the JSSA establishes "that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community or division wherein the court convenes." Section 1862 of the JSSA mandates that "[n]o citizen shall be excluded from service as a grand or petit juror in the district courts of the United

2

States . . . on account of race, color, religion, sex, national original, or economic status." Mr. Jordan may move "to dismiss the indictment or stay the proceedings against him on the ground of substantial failure to comply with the provisions of this title in selecting the grand or petit jury." 28 U.S.C. § 1867(a). To effect this right, Mr. Jordan has "an unqualified right to inspect jury lists." *Test v. United States*, 420 U.S. 28, 30 (1975) (per curiam).

For Mr. Jordan to determine whether he has a valid challenge under the JSSA to the composition of the grand jury that indicted him and the petit jury that will decide if he is guilty, and if so, whether he should be sentenced to death, he must have access to the source lists provided to the Clerk's office. The only way to determine if the source lists present a fair cross section of the community is to compare the jury registration lists to demographic information concerning the counties constituting the Eastern and Northern Divisions of the Eastern District of Missouri. Indeed, the government recognized this fact in *Test*, conceding the defense needed access to the voter registration lists.

In *Test*, the defendant filed a motion to dismiss the indictment, arguing the Colorado voter registration lists used to create the master jury wheel excluded persons with Spanish surnames, students, and blacks. *Test v. United States*, 420 U.S. 28, 29 (1975). To support the motion, the defense asked to inspect jury lists, including the voter registration lists. *Id.* The district court denied the motion to inspect and the motion to dismiss, finding the defendants had not established a *prima facie* case of intentional discrimination. The Tenth Circuit affirmed. *Id.*

In its brief to the Supreme Court, the government conceded that the defense did not need to prove intentional discrimination to prove a violation of the JSSA, let alone to be allowed to review the jury lists. Gov. Brief, *Test v. United States*, 420 U.S. 28 (1975), 1974 WL 186121, at *13-15. The government also conceded that a defendant need only make a timely request to review

3

jury lists to be accorded the right to inspect the lists to determine if there was a basis to challenge the local jury selection plan for violating the JSSA. *Id.* at *9-10. Finally, the government acknowledged that the voter registration lists provided to the court must be reviewable by the defense. *Id.* at *11. This was true because while the JSSA requires voter registration lists to be the primary source of jurors, "the Act also specifies . . . that '[t]he plan shall prescribe some other source or sources of names in addition to voter lists to foster the policy and protect the rights secured by [the Act]." *Id.* The government continued:

> In short, Congress intended that voter lists be supplemented by other sources where the use of voter lists results in substantial failure to achieve the cross sectional goal of Section 1861. Since, on this record, it is not possible to know the degree of underrepresentation, if any, of various groups on Colorado's voting lists, and thus the possible deviation of Colorado federal juries from the community cross section, we believe that petitioner was entitled to inspect the jury lists.

*Id.* at *15. As the government brief in *Test* makes clear, to determine if the voter registration lists have been supplemented to ensure a fair cross section of the community is considered for jury service, Mr. Jordan must have access to the source lists provided to the Clerk for use in creating the Master Jury Wheel. Those lists can then be compared to demographic information from the relevant counties making up the division in order to ensure compliance with the JSSA.

Additionally, the Jury Plan requires that "[t]he number of names drawn from each county or subdivision for placement in the master jury wheel of each division, and for each reel thereof, shall be substantially in the same proportion as the county or subdivision's population of registered voters bears to the total population of registered voters in the division." Jury Plan at 3. To ensure compliance with this requirement, which helps to ensure a fair cross section of the entire division rather than a cross section heavily weighted in favor of certain counties, Mr. Jordan needs access to the source lists to compare to the Master Jury Wheel. Again, without access to the lists, there is no way to ensure juries are actually representing a fair cross section of the community.

4

The government also objects to disclosure of the voter registration lists on the grounds that Mr. Jordan will have access "to very personal information on every citizen in the Eastern District of Missouri." *Response* at 7 n.3. However, the Court already has this information, and the State of Missouri makes this information—including a voter's name, date of birth, and address—available to the public. *See* Mo. Rev. Stat. §§ 115.157-115.158 (restricting disclosure to non-commercial purposes). Accordingly, providing this information to Mr. Jordan is not unduly intrusive.

    **3.** **An electronic copy of the Master Jury Wheel data including names and addresses; racial, ethnic, gender, and age information; and other data in any way associated with or recorded with the individuals in/for the jury pool from which the grand jury in this case was selected.**

The government does not object to Mr. Jordan receiving a copy of the Master Jury Wheel. *Response* at 10. The government does object to Mr. Jordan receiving the names and addresses of the individuals on the Master Jury Wheel but does not provide any legal basis for redacting this information. *Id.* at 10-11. *Test* establishes that a defendant has the right to inspect and copy "jury lists." This includes the Master Jury Wheel, which is the "jury list" from which all potential grand and petit jurors are drawn. The names and addresses of the individuals on the Master Jury Wheel are needed to compare against the voter registration lists to ensure that the number of jurors drawn from each county or division is substantially proportionate to the county or division's population relative to the total population of the division. Jury Plan at 3. Further, as explained *supra*, the voters' personal information is already available to the general public.

    **4.** **An electronic copy of the Qualified Jury Wheel data, including names and addresses; racial, ethnic, gender, and age information; and other data in any way associated with or recorded with the individuals in/for the jury pool from which the grand jury in this case was selected, as well as information on when the name was added to the Qualified Jury Wheel for the pool from which the grand jury from which the grand jury in this case was selected.**

The government's position with regard to the Qualified Jury Wheel mirrors its position with regard to the Master Wheel. *Response* at 11. Mr. Jordan has the same reply.

5

> **5. All surveys or reports regarding the composition of the Master or Qualified Jury Wheel (typically compiled on Forms AO-12 and formerly JS-12) for the preceding ten years.**

The government does not object to Mr. Jordan receiving AO-12 forms for the Master Jury Wheel for the Eastern Division used to select Mr. Jordan's grand and petit jury but questions the need for AO-12 forms from previous years. *Response* at 11. Information from previous jury wheels can be compared to the current Master Jury Wheel and AO-12 reports from that wheel to help determine if the current plan is both capturing a fair cross section and is not discriminating against any potential juror based on race, color, religion, sex, national origin, or economic status, as required by the JSSA. A substantial change in statistics from previous jury plans and jury wheels created under the plan may be evidence that the current plan is not working, and thus are relevant jury selection records that should be disclosed.

> **6. The dates and names selected randomly from the Master Jury Wheel for the venire from which Mr. Jordan was indicted.**

The government objects to Mr. Jordan's request for the dates and names selected for the venire from which Mr. Jordan was indicted. *Response* at 12. However, this information is needed to determine whether the grand jury was properly in existence when it returned the Fifth Superseding Indictment. *See United States v. Bolton*, 893 F. 2d 894, 895, 899 (7th Cir. 1990) (dismissing an indictment issued by a special grand jury after finding that its term had not been extended properly); *United States v. Macklin*, 523 F.2d 193, 195-96 (2d Cir. 1975) (indictment issued by an expired grand jury was invalid).

Mr. Jordan was initially indicted on one count of conspiracy to possess with intent to distribute cocaine on August 26, 2015. A federal grand jury returned the Fifth Superseding Indictment on December 20, 2018—more than three years later. A grand jury may only serve more than 18 months "if the court, having determined that an extension is in the public interest, extends

6

the grand jury's service." Fed. R. Crim. P. 6(g). Mr. Jordan is entitled to dates of the grand jury empanelment and any extensions to determine if the Fifth Superseding Indictment was properly issued. *E.g.*, *United States v. Diaz*, 236 F.R.D. 470, 478-79 (N.D. Cal. 2006) (granting defendant right to inspect orders convening and extending the term of the grand jury); *United States v. Causey*, No. H-04-025, 2004 WL 1243912, at *19-20 (S.D. Tex. May 25, 2004) (same); *see also In re Grand Jury Investigation (DiLoreto)*, 903 F.2d 180, 182-83 (3d Cir. 1990) ("disclosure of the commencement and termination dates of the grand jury does not disclose the essence of what took place in the grand jury room . . . [and] does not violate the freedom and integrity of the deliberative process of the grand jurors").

> **7.** **The completed juror qualification forms of all persons qualified for service as described on page 4 of the Jury Plan for the selection of grand and petit jurors for the pool from which the grand jury in this case was selected.**

The government objects to Mr. Jordan inspecting juror qualification forms or juror questionnaires, citing to *United States v. Davenport*, 824 F.2d 1511, 1515 (7th Cir. 1987). *Response* at 13. While *Davenport* held that access to juror questionnaires was not necessary in that case because the defense was only challenging whether the jury plan was drawing jurors from a fair cross section of the community. However, the JSSA has two goals—drawing jurors from a fair cross section of the community, 28 U.S.C. § 1861, and prohibiting discrimination, 28 U.S.C. § 1862. Thus, the JSSA embodies two important general principles:

> (1) random selection of juror names from the voter lists of the district or division in which court is held; and (2) determination of juror disqualifications, excuses, exemptions, and exclusions on the basis of objective criteria only. These principles provide the best method for obtaining jury lists that represent a cross section of the relevant community and for establishing an effective bulwark against impermissible forms of discrimination and arbitrariness.

H.R. Rep. No. 1076, 90th Cong., 2d Sess. (1968), reprinted in 1968 U.S. Code Cong. & Admin. News 1792, 1793. Inspection of juror questionnaires and the process used by courts to qualify

7

jurors based on those questionnaires address the prohibition on discrimination under the JSSA. Indeed, the need for access to juror questionnaires is made clear by the Jury Plan's explanation of how the Qualified Jury Wheel is created, stating that "[b]efore a name is placed on a qualified jury list, the Clerk, acting on behalf of the Court, shall determine on the basis of information provided on the juror qualification form and other competent evidence whether a person is qualified, exempt or excused from jury service." Jury Plan at 4.

A prospective juror is deemed qualified unless that person: 1) is not a citizen at least eighteen years old who has resided within the judicial district for one year; 2) is unable to read, write, and understand English sufficiently to fill out the juror qualification form; 3) is unable to speak English; 4) has a mental or physical infirmity making him or her incapable of rendering satisfactory jury service; or 5) has been convicted of a felony or has a pending felony charge. *Id.* at 4-5 (citing 28 U.S.C. § 1865). The Jury Plan exempts from service active duty service members, members of fire or police departments, and public officials. *Id.* at 6. The Jury Plan permits the Clerk or any judge to "defer or excuse any person issued a Qualification Questionnaire or summoned for jury service upon grounds that such person has made a showing of significant hardship circumstances or extreme inconvenience or both." *Id.* at 5. The Plan also permits any judge to excuse a person upon a finding that such person may be unable to render impartial service, has been excluded by peremptory challenge or for good cause, or would likely threaten the secrecy of the proceedings. *Id.*

Thus, the JSSA and the Jury Plan make clear the importance of juror questionnaires. The questionnaires provide the information used to determine whether a juror is qualified and if qualified, whether the juror is exempt from service or should be excused from service. Without access to the questionnaires, Mr. Jordan cannot determine whether he has a potentially meritorious

challenge based on the failure to apply objective criteria when qualifying jurors. For this reason, courts have granted defendant's the right to inspect juror qualification forms. *E.g.*, *United States v. Test*, 550 F.2d 577, 581 (10th Cir. 1977) (granting defendant right to inspect qualifying questionnaires returned by prospective jurors on remand); *United States v. Stile*, No. 11-00185, 2014 WL 1908938, at *6 (D. Me. May 13, 2014) (granting defendant access to redacted juror questionnaires, list of zip codes of potential jurors who did not return questionnaires, and documentation setting for the reason(s) for which potential jurors were excused or exempted from jury service); *United States v. Friel*, No. 06-25, 2006 WL 2061395, at *2 (D. Me. July 21, 2006) (granting defendant access to completed juror questionnaires of jurors summoned for grand jury that indicted defendant); *Causey*, 2004 WL 1243912 at *15 (granting defendant right to inspect juror qualification questionnaires used to assemble qualified wheel subject to "appropriate safeguards"); *United States v. Van Pelt*, No. 02-40042, 1993 WL 23730, at *9 (D. Kan. Jan. 13, 1993) (granting defendant right to inspect completed jury qualification forms returned by those selected from master jury wheel for qualified jury wheel but prohibiting copies absent leave of court); *United States v. Northside Realty Associates, Inc.*, 510 F. Supp. 668 (N.D. Ga. 1981), *overruled by United States v. Bearden*, 659 F.2d 590, 604-07 (5th Cir. 1981) (while review of juror questionnaires revealed numerous examples of wrongful exclusions, these exclusions did not amount to a substantial violation of the JSSA).

Neither *Davenport* nor the other district court cases cited by the government address improper exclusions or exemptions, as the cases are based on the notion that juror questionnaires are not necessary to establish a fair cross section challenge under the JSSA. *See Davenport*, 842 F.2d at 1515 (discussing only right to fair cross section); *United States v. Savage*, No. 07-550, 2012 WL 4616099, at *4 (E.D. Pa. Oct. 2, 2012) (noting that "the Sixth Amendment and the JSSA

9

guarantee defendants a trial by a jury selected from a fair cross-section of the community" with no discussion of the JSSA's anti-discrimination provision); *United States v. Rice*, 489 F. Supp. 2d 1312, 1319 (S.D. Ala. 2007) (denying access to questionnaires given "the apparent unhelpfulness of such questionnaires in assessing the viability of any fair cross-section challenge"); *United States v. Nichols*, 248 F. Supp. 2d 1027, 1035 (D. Kan. 2003) ("It is not the actual selection of the grand jury which would constitute the violation, but rather whether the jury selected 'at random from a fair cross section of the community.'").

In *United States v. Diaz*, 236 F.R.D. 470 (N.D. Cal. 2006), while the district court denied access to completed juror questionnaires because "defendants ha[d] not shown that this district's jury-selection plan provides for disqualification, exclusion, excusal or exemption inconsistently with the Act," *id.* at 482, the court also denied access to completed questionnaires because the JS-12 forms contained relevant demographic data, suggesting that its decision was premised on a fair cross section challenge. *Id.*; *see id.* at 476 (stating that the only purpose of the JSSA is to ensure that a jury is drawn from a fair cross section of the community). However, this is the same mistake made by the district court in *Test*. A court cannot deny access to jury information under the JSSA because a defendant has not yet been able to prove a violation of the JSSA. As the Supreme Court explained, "[W]ithout inspection, a party almost invariably would be unable to determine whether he has a potentially meritorious jury challenge." *Test*, 420 U.S. at 750. Access to juror questionnaires is essential for determining if there is a potentially meritorious challenge on the basis that the execution of the Jury Plan exempts or excuses potential jurors based on nonobjective factors or based on subjective interpretation or application of otherwise objective factors. Mr. Jordan's request should be granted.

10

> 8. **The completed jury qualification forms of, or an electronic database detailing, all persons disqualified, excused, or exempted, and any other materials or information concerning these determinations (including requests for excusal and exemption and orders or notations concerning excusals, exemptions, and disqualifications) for the last five years.**

The government objects to Mr. Jordan receiving this information on the basis that Mr. Jordan is not entitled to receive the juror questionnaires. *Response* at 14. As explained *supra*, the government's assertion is wrong. *Diaz* presupposes its denial of access to these records on the defendant's failure to show that the "district's jury-selection plan provides for disqualification, exclusion, excusal or exemption inconsistently with the [JSSA]." 236 F.R.D. at 482. However, as the Supreme Court held in *Test*, in part based on the government's concession, a defendant cannot be denied access to jury records because he has not yet established a violation of the JSSA. 420 U.S. at 750. Mr. Jordan's request for this information should be granted.

> 9. **The jury qualification forms of, or an electronic database detailing, all persons whose form was returned as undeliverable or otherwise not delivered by the United States Postal Service for the last five years.**

The government's position with regard to undeliverable jury qualification forms mirrors its position with regard to juror qualification forms for persons disqualified, excused, or exempted from juror service. *Response* at 15. Mr. Jordan has the same reply.

> 10. **All documents, materials, and information concerning the delegation of excusal responsibilities and/or authority for determining whether persons are qualified, exempt, or excused from jury service and standards.**

The government objects to Mr. Jordan receiving this information because he has not "any showing that the presiding Judge or Clerk of Court are not following the Court's Plan." *Response* at 16. However, Mr. Jordan does not need to prove a violation of the Jury Plan in order to gain access to "records or papers used by the jury commission or clerk in connection with the jury selection process" as authorized by 28 U.S.C. § 1867(a) and (f). As the government argued in *Test*:

11

> Section 1867(f) governs the disclosure of records used in the jury selection process, and that Section expressly provides that "[t]he parties in a case shall be allowed to inspect, reproduce, and copy such records or papers at all reasonable times during the preparation and pendency of [a motion to dismiss] * * *." Section 1867(f) on its face thus confers a right of access to jury records without any required showing by the requesting party, and this literal reading of the statute has been adopted by several courts of appeals.
>
> Indeed, such an unqualified right of discovery appears to be necessary to the effective use of the challenge procedures specified in the Act . . . , and nothing in the Act's legislative history suggests that Congress intended that a party's right to inspect jury records be qualified in any manner.

Gov. Brief, *Test v. United States*, 420 U.S. 28 (1975), 1974 WL 186121, at * 8 (internal citations omitted) (footnote omitted).

The government also claims that Mr. Jordan has not cited any case or statutory law establishing that "the Court must turn over internal documents to a defendant." *Response* at 16. Again, *Test* makes clear that Mr. Jordan is entitled to the documents requested. Moreover, as acknowledged by the district court in *Diaz*, a case relied on by the government, "[c]lerks may make determinations in the jury-questionnaire screening process that are neither 'subjective' nor 'extrastatutory.' . . . Discretionary determinations are made by the chief judge." 236 F.R.D. at 482-83. Here, the Jury Plan states that "the Clerk . . . shall determine on the basis of information provided on the juror qualification form and other competent evidence whether a person is qualified, exempt or excused from jury service." Jury Plan at 4. The Jury Plan also authorizes the Clerk to "defer or excuse any person issued a Qualification Questionnaire or summoned for jury service upon grounds that such person has made a showing of significant hardship circumstances or extreme inconvenience or both" but reserves other decisions for a judge. *Id.* at 5. Given the Jury Plan's directive for the Clerk to make certain discretionary decisions as to juror qualifications, exclusions, and exemptions, Mr. Jordan should have access to the records documenting any such delegation of authority.

12

> **11.    To the extent the Clerk of the Court employs an electronic data processing system, the name of the data processing system, the contract with the provider of the processing system, the manual for use of the processing system, and a copy of the program code so as to ensure the required proportion of names from each county are maintained and the random selection of the required number of names from the entire source list.**

The government objects to this request, relying on prior district court decisions in *Rice*, 489 F. Supp. 2d at 1321-22, and *Diaz*, 236 F.R.D. at 484. *Response* at 16-17. Neither case should bar the disclosure of the documents sought by Mr. Jordan.

Here, the Jury Plan gives the Clerk the option to select names for/from the Master Jury Wheel and the Qualified Jury Wheel using "a properly programmed electronic data processing system for pure randomized selection." Jury Plan at 2. The Jury Plan goes on to state that "[t]he selection of names . . . must also insure [sic] that the mathematical odds of any single name being picked are substantially equal" and that "[t]he number of names drawn from each county or subdivision . . . shall be substantially in the same proportion as the county or subdivision's population of registered voters bears to the total population of registered voters in the division." *Id.* at 2-3.

In *Rice*, the Jury Plan provided "a basic explanation of the electronic procedures used in the jury selection process . . . sufficient to explain that methodology." 489 F. Supp. 2d at 1322. Similarly, in *Diaz*, the clerk's office submitted a description of the instructions provided to its contractor and a procedural manual describing "the procedures employed in the merge-purge jury selection process." 236 F.R.D. at 484 (granting the request to the extent that the clerk's manual and declaration comply with defendant's request for a description of the information lists are merged). No such explanations or instructions have been provided in this case.

Further, as explained above, *Diaz* denied defendant's request for additional to documents relating to the computer program used in the jury selection process on the grounds that such

13

information was unnecessary to the preparation of any fair-cross section challenge. *Id.* Mr. Jordan's request, however, is not limited to a fair cross challenge but also challenges improper exclusions or exemptions. Further, denying access to jury records because Mr. Jordan has not yet established a violation of the JSSA, violates the JSSA. *Test*, 420 U.S. at 750. Access to these documents is essential for determining if there is a potentially meritorious challenge on the basis that the Jury Plan fails to ensure a random selection process, and Mr. Jordan's request for this information should be granted.

> **12.    Any and all periodic reports of statistical sampling complied in the preceding ten years.**

The government objects to the disclosure of this information absent "a showing that any such material is 'used in connection with the jury selection process.'" *Response* at 17 (citing 28 U.S.C. § 1867(f)). As explained in relation to Mr. Jordan's request regarding information pertaining to any electronic data processing system, the Jury Plan mandates that the selection of names from the source list, the master wheel, and the qualified wheel be random and that the number of names drawn for the master wheel be substantially proportionate to the county or subdivision's population of registered voters. Jury Plan at 2-3. To the extent that the Clerk, or any authorized contractor, *id.* at 8, conducts statistical sampling to ensure that these mandates are met, those reports are jury selection records, and Mr. Jordan is entitled to their disclosure under the JSSA.

> **13.    The date that the Master Jury Wheel and Qualified Jury Wheel for the grand jury in this case was filled, when the Master Jury Wheel and Qualified Jury Wheel is scheduled to be emptied and refilled, and information regarding whether the master Jury Wheel and Qualified Jury Wheel for the grand jury that issued the indictment in this case will be the same wheels used in the petit jury selection process.**

The government does not seriously challenge Mr. Jordan's right to access this information.

14

Finally, Mr. Jordan does not object to the Court entering an order preventing defense counsel and the government from contacting any individuals whose names and personal information are provided pursuant to this motion.

WHEREFORE, for all the foregoing reasons, Mr. Jordan respectfully requests this Court grant the discovery requested herein.

Respectfully submitted,

/s/ J. William Lucco
J. William Lucco, #01701835IL
Lucco, Brown, Threlkeld & Dawson, LLP
224 St. Louis Street
Edwardsville, Illinois 62025
(618) 656-2321
(618) 656-2363 Facsimile
Email: blucco@lbtlaw.com

/s/ Maria A. Pedraza
Maria A. Pedraza, #317458PA
Federal Community Defender for the
Eastern District of Pennsylvania
601 Walnut Street, Suite 540W
Philadelphia, PA 19106
(215) 928-1100
(215) 928-1112 Facsimile
Email: maria_pedraza@fd.org

/s/Hunter S. Labovitz
Hunter S. Labovitz, #204760PA
Federal Community Defender for the
Eastern District of Pennsylvania
601 Walnut Street, Suite 540W
Philadelphia, PA 19106
(215) 928-1100
(215) 928-1112 Facsimile
Email:  hunter_s_labovitz@fd.org

/s/ Michael J. Gorla
Michael J. Gorla, #26399MO
555 Washington Avenue, Suite 600
St. Louis, Missouri 63101
(314) 621-1617
(314) 621-7448 Facsimile
Email: mjgorla@msn.com

/s/James J. McHugh, Jr.
James J. McHugh, Jr., #48308PA
Federal Community Defender for the
Eastern District of Pennsylvania
601 Walnut Street, Suite 540W
Philadelphia, PA 19106
(215) 928-1100
(215) 928-1112 Facsimile
Email: james_mchugh@fd.org

*Counsel for Defendant Anthony Jordan*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 20, 2019, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following: Mr. Michael A. Reilly, Mr. Thomas S. Rea, Ms. Erin Granger, and Ms. Sonia Jimenez, Assistant United States Attorneys, 111 South 10th Street, 20th Floor, St. Louis, Missouri 63102.

/s/ Michael J. Gorla
/s/ J. William Lucco
/s/ Maria A. Pedraza
/s/ James J. McHugh, Jr.
/s/ Hunter S. Labovitz
*Attorneys for Anthony Jordan*