**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:15-CR-404 HEA NAB |
| ) | |
| ANTHONY JORDAN, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**REPORT AND RECOMMENDATION OF**
**UNITED STATES MAGISTRATE JUDGE**

This matter is before the Court on Defendant Anthony Jordan's Motion to Preclude the Death Penalty as a Punishment because the Federal Death Penalty Act is Unconstitutional [Doc. 2305]. The above matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). The Government filed a response in opposition to the motion [Doc. 2356]. Defendant filed a reply brief. [Doc. 2386.] For the following reasons, the undersigned will recommend denial of Defendant's Motion.

**I.      BACKGROUND**

Defendant Anthony Jordan was charged with multiple crimes relating to events occurring in the Eastern District of Missouri between January 1, 2002, and August 27, 2015. On December 20, 2018, the Government filed its Fifth Superseding Indictment and Notice of Intent to Seek the Death Penalty. [Docs. 1988, 1990.] Counts 2 through 12 of the Fifth Superseding Indictment allege Defendant committed eleven murders, each of which carry the potential for a sentence of death.

Defendant's Motion to Preclude the Death Penalty as a Punishment Because the Federal Death Penalty Act is Unconstitutional was fully briefed as of September 16, 2019. [Docs. 2305,

2307, 2356, 2386.] On December 13, 2019, the undersigned held a hearing in this matter. [Doc. 2468.]  At the hearing, the Court and the parties addressed multiple motions, including presenting oral argument on the Motion at issue here. In his briefing and during oral argument, Defendant requested an evidentiary hearing. At such a hearing, Defendant seeks to put forth statistical evidence and capital sentencing trends by way of testimony of Kevin McNally, Resource Counsel and former Director of the Federal Death Penalty Resource Counsel Project, whose Declaration and supporting exhibits were filed with the Court. [Doc. 2307, pp. 29-102.]

Having reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and the record. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by an evidentiary hearing, this motion shall be decided on the record before this Court without an evidentiary hearing.

## II.     DISCUSSION

In his motion, Defendant challenges the constitutionality of the Federal Death Penalty Act (FDPA), as codified in 18 U.S.C. §§ 3591-3593 and administered by the Department of Justice. Defendant makes three overarching arguments. First, he maintains the FDPA is arbitrary in violation of the Eighth Amendment. Second, he asserts that the evolving standards of decency have rendered the FDPA cruel and unusual in violation of the Constitution. Third, Defendant argues that "death qualifying" a jury undermines the reliability of the sentence imposed and violates defendants' rights and the rights of potential jurors.  I will address each argument in turn.

### A.     Defendant Has Not Demonstrated The FDPA Creates A Capital Punishment Scheme That Is Arbitrary In Violation Of The Eighth Amendment.

#### 1.     Infrequent Application and Imposition of the FDPA

2

Defendant argues that the FDPA is imposed in an arbitrary manner because it fails to distinguish the most culpable individuals from the rest of the population found guilty of murder. Defendant emphasizes statistics that reflect only a fraction of potential capital defendants have been authorized for capital prosecution, and juries have returned an even smaller number of death sentences. Thus, Defendant alleges the Government does not seek, and juries do not impose, the death penalty in a consistent manner. Defendant relies on *Furman v. Georgia* and urges the Court to consider the findings in *United States v. Fell* in holding the FDPA violates the Eighth Amendment. *See Furman,* 408 U.S. 238, 239 (1972) (holding Georgia's then-existing capital punishment statute was unconstitutional); *Fell,* 224 F.Supp.3d 327, 341 (D. Vt. 2016).

Contrary to Defendant's argument, the fact that the death penalty is rarely sought or imposed does not make the FDPA unconstitutional. *See Gregg v. Georgia,* 428 U.S. 153, 195 (1976) ("the concerns expressed in *Furman* that the penalty of death not be imposed in an arbitrary or capricious manner can be met by a carefully drafted statute that ensures that the sentencing authority is given adequate information and guidance"); *United States v. Sampson*, 486 F.3d 13, 23–24 (1st Cir. 2007) (reviewing Supreme Court cases post-*Furman* and concluding the FDPA's sentencing scheme was not arbitrary); *United States v. Mitchell,* 502 F.3d 931, 983 (9th Cir. 2007) ("That federal executions are rare… does not render the FDPA unconstitutional."). Indeed, in *Fell,* the district court ultimately concluded that despite its finding that the death penalty is arbitrarily imposed, the district court was not in a position to change settled law. *Fell,* 224 F.Supp.3d at 359 ("Institutional authority to change this body of law is reserved to the Supreme Court.").

Additionally, the Eighth Circuit has held "under the Constitution, the FDPA adequately narrows the class of persons eligible or the death penalty." *United States v. Allen,* 247 F.3d 741, 760 (8th Cir. 2001), *judgment vacated on other grounds,* 536 U.S. 953 (2002). Moreover,

3

numerous federal district courts explicitly reject arguments that the FDPA is unconstitutional based on the frequency in which the death penalty is sought or imposed. *See, e.g., United States v. Bowers*, 2020 WL 1675916, at *2 (W.D. Pa. Apr. 6, 2020); *United States v. Mills*, 393 F. Supp. 3d 650, 680 (E.D. Mich. 2019); *United States v. Ofomata*, 2019 WL 527696, at *2 (E.D. La. Feb. 11, 2019); *United States v. Con-Ui*, 2016 WL 9331115, at *5 (M.D. Pa. Jan. 28, 2016); *U.S.A. v. Ciancia*, 2015 WL 13798659, at *2 (C.D. Cal. May 15, 2015); *United States v. Coonce*, 2014 WL 1018081, at *2 (W.D. Mo. Mar. 14, 2014); *United States v. Sanders*, 2014 WL 3122418, at *3 (W.D. La. July 3, 2014); *United States v. Williams*, 2013 WL 1335599, at *4 (M.D. Pa. Mar. 29, 2013); *United States v. Taylor*, 648 F. Supp. 2d 1237, 1241 (D.N.M. 2008). This Court sees no compelling reason to deviate from this well-settled law.

### 2.     Discrimination Based on Geography, Race, and Gender

Defendant also argues that the FDPA is unconstitutional because the death penalty is sought disproportionately in certain geographic locations and based on the victim's race and gender. He argues there appears to be no legitimate rationale for why there is such a strong correlation between federal death penalty cases and the states most often pursing state capital cases. With respect to race and gender, Defendant argues there is a much higher likelihood of death penalty being sought against Defendants whose alleged victims are white, especially white women.

As the Government points out, federal courts have rejected similar geography, gender, and race-related arguments advanced by capital defendants. *See, e.g., Sampson*, 486 F.3d at 25–26 (rejecting Sampson's claim that the FDPA is unconstitutional because the death penalty is sought based on the race of the defendant and victim and the locale in which the defendant is charged); *United States v. Jacques, No.* 2011 WL 1675417, at *5 (D. Vt. May 4, 2011), *aff'd in part, vacated in part on other grounds*, 684 F.3d 324 (2d Cir. 2012) (rejecting Fifth and Eighth Amendment

4

arguments, insofar as they were based on statistical evidence of racial, geographic and gender-based disparities and not on any proof of case-specific discrimination or arbitrariness); *United States v. Basciano,* 763 F. Supp. 2d 303, 340 (E.D.N.Y. 2011), *aff'd,* 634 F. App'x 832 (2d Cir. 2015); *United States v. Candelario-Santana*, 368 F. Supp. 3d 316, 321 (D.P.R. 2019); *Con-Ui*, 2016 WL 9331115, at *6; *Sanders,* 2014 WL 3122418, at *4; *Williams*, 2013 WL 1335599, at *6. District courts have also recently explained that such reliance on general statistical evidence alone is insufficient to sustain an arbitrariness claim, and such an argument is foreclosed by the Supreme Court's decision in *McCleskey v. Kemp,* 481 U.S. 279 (1987). *See, e.g., Bowers*, 2020 WL 1675916, at *2–3 (rejecting argument that FDPA is unconstitutionally arbitrary because its imposition is marked by racial disparity and bias against males and minorities accused of homicide and persons accused of killing white females); *Mills*, 393 F. Supp. 3d at 681 ("[T]he use of such a generalized statistical disparity, without evidence of its applicability to Defendants, was foreclosed by the Supreme Court in *McClesky.*").

In 2019, the Eighth Circuit affirmed a decision rejecting a facial challenge and an as-applied challenge to the FDPA based on geography in *United States v. Coonce.* 932 F.3d 623, 646 (8th Cir. 2019). There, Coonce argued his sentence was arbitrary because the Western District of Missouri has more death penalty cases than the average district court. *Id.* at 646-47. The Eighth Circuit found that his reliance on generalized statistics about other districts and defendants did not establish that his sentence was arbitrary, and he did not show that he personally received a sentence of death based on geography. *Id.* Here, Defendant's arguments with respect to geography, race, and gender present the same flaws, as the statistics on which Defendant relies provide "no basis for attributing the statistical discrepancies with respect to geography and race in FDPA prosecutions to discrimination rather than to other factors, such as differences in the nature of the

5

crimes involved." *See Sampson,* 486 F.3d at 26-27. As such, I find Defendant's argument in this regard does not support a conclusion that the FDPA is unconstitutional.

### 3. Juror Confusion Regarding Sentencing

Defendant next argues that under the current "guided discretion" framework of the FDPA, jurors consistently misunderstand, misapply, or ignore the guidelines and instructions given to them by the courts. Defendant relies on empirical studies to illustrate that jurors are unable to comprehend the FDPA's sentencing scheme and its varying burdens of proof and factors, leading to arbitrary, biased, and erroneous death verdicts that are arbitrary and capricious.

The Government responds that this argument fails because it violates a "crucial assumption" underlying the system of trial by jury—that juries will follow the instructions given them by the trial judge. *Richardson v. Marsh,* 481 U.S. 200, 211 (1987). The Government relies on *Boyde v. California* for the proposition that jury instructions are constitutionally defective only if there is a "reasonable likelihood" that they misled the jury into sentencing the defendant to death and argues that instructions that are only arguably ambiguous or create only a possibility of jury inhibition are not unconstitutional. *Boyde,* 494 U.S. 370, 380 (1990) (finding no reasonable likelihood that jurors misinterpreted allegedly ambiguous instruction in death penalty case).

The Court agrees that in terms of jury comprehension, there is an "almost invariable assumption of the law that jurors follow their instructions…" *Bowers*, 2020 WL 1675916, at *2 (*quoting Richardson,* 481 U.S. at 206); *see also United States v. Llera Plaza,* 179 F.Supp.2d 444, 450 n.5 (E.D. Pa. 2001) (studies "do not establish that the concepts of aggravating and mitigating factors as used in the FDPA bear such a degree of intrinsic 'incomprehensibility' as to render them incapable of clarification through adequate jury instructions"); *United States v. Roof,* 225 F.Supp.3d at 415 n.2 (D.S.C. 2016) (rejecting claims of juror confusion and listing district court

6

capital case decisions rejecting similar claims). Accordingly, this Court joins the numerous courts that have previously rejected similar claims regarding the FDPA's unconstitutionality.[1]

### B. Defendant's Evolving Standards of Decency Argument is Foreclosed by Supreme Court Precedent.

Defendant next argues that the FDPA is unconstitutional because capital punishment is no longer accepted under an evolving standards of decency analysis. Defendant relies on the fact that the majority of states and the federal government do not permit capital punishment or have not carried out an execution in the last ten years, public support for the death penalty has declined, and several reports and public opinions reflect opposition to capital punishment.

Despite these trends, the Supreme Court has precluded any argument that the evolving standards of decency render the FDPA cruel and unusual in violation of the Eighth Amendment. *See McCleskey,* 481 U.S. at 300–03; *Roberts v. Louisiana,* 428 U.S. 325, 331 (1976); *Gregg,* 428 U.S. at 168–187. In *Gregg v. Georgia,* the Supreme Court held that capital punishment is not a *per se* violation of the Eighth Amendment in cases of intentional murder. 428 U.S. at 187. The Supreme Court has more recently affirmed again that "[t]he Constitution allows capital punishment." *Bucklew v. Precythe,* 139 S. Ct. 1112, 1122 (2019); *see also Gossip v. Gloss,* 135 S. Ct. 2726, 2732 (2015) ("[I]t is settled that capital punishment is constitutional."); *Kennedy v. Louisiana,* 554 U.S. 407, 420 (2009) ("[T]he death penalty is not invariably unconstitutional…").

---

[1] *See, e.g.*, *Sanders*, 2014 WL 3122418, at *6-7 (rejecting "claim that the FDPA is unconstitutional because of an incomprehensible sentencing scheme"); *Coonce*, 2014 WL 1018081, at *22 ("The Court ... joins with other district courts in concluding that the submissions fall short of the mark in establishing that the FDPA is unconstitutional."); *United States v. Sablan*, 2014 WL 172543, at *4 (E.D. Cal. Jan. 15, 2014) ("This Court agrees with the other courts that have addressed and rejected the position taken by Defendant ... on whether the FDPA is incomprehensible."). *See also Williams*, 2013 WL 1335599, at *17-18; *Jacques,* 2011 WL 1675417, at *11-13; *Taylor,* 635 F.Supp.2d at 1247; *United States v. Green*, 2008 WL 4000901, at *2 (W.D. Ky. Aug. 26, 2008) (holding empirical studies, including the Capital Jury Project, "provide[ ] no basis for undermining the constitutionality of the FDPA, a statute that has withstood innumerable attacks since its passage in 1994"); *United States v. Mikos,* 2003 WL 22110948, at *17 (N.D. Ill. Sept. 11, 2003) ("There is no justification prior to trial for this court to hold that the sentencing jury will be unable to comprehend the provisions of the FDPA or the instructions provided by the court or counsel.").

This Court is bound by Supreme Court precedent, and must therefore reject Defendant's argument regarding evolving standards of decency.

### C. Defendant Has Not Established That "Death-Qualifying" Jurors Violates His Constitutional Rights.

Defendant argues the "death-qualification process" violates defendants' rights and jurors' rights.[2] First, he argues the removal of jurors based on their opposition to the death penalty results in a jury not reflective of a cross-section of the community under the Fifth, Sixth, and Eighth Amendments. Second, he argues "death qualification" creates a biased jury in favor of the prosecution in violation of 18 U.S.C. § 3592(a). Third, he argues the exclusion of potential jurors based on their death penalty views excludes individuals based on their religious believes in violation of the First Amendment and the Religious Freedom Restoration Act.

#### 1. Fair-Cross Section and Juror Bias

Defendant argues that because potential jurors who are opposed to the death penalty are excluded from capital juries, the death-qualification process results in a jury that no longer represents the views of the general population. He further contends the resulting effect is exclusion of a disproportionate number of racial minorities and women from capital juries, and consequently, capital juries do not represent a fair-cross section and tend to be biased in favor of the prosecution.

In *Wainwright v. Witt*, the Supreme Court held that "the proper standard for determining when a prospective juror may be excluded for cause because of his or her views on capital punishment ... is whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" 469 U.S. 412, 424 (1985)

---

[2] "A 'death-qualified' jury is one from which prospective jurors have been excluded for cause in light of their inability to set aside their views about the death penalty that would prevent or substantially impair the performance of their duties as jurors in accordance with their instructions and their oath." *Buchanan v. Kentucky,* 483 U.S. 402, 407 n.6 (1987) (internal quotations omitted).

8

(quoting *Adams v. Texas*, 448 U.S. 38, 45 (1980)).  In *Morgan v. Illinois,* the Supreme Court later held "that a juror who in no case would vote for capital punishment, regardless of his or her instructions, is not an impartial juror and must be removed for cause."  504 U.S. 719, 728 (1992).

In *Lockhart v. McCree,* the Supreme Court held that death qualification does not violate a defendant's Sixth Amendment right to an impartial jury. 476 U.S. 162, 173-80 (1986) (rejecting defendant's arguments, despite assuming for purposes of the opinion that the studies established death qualification "produces juries somewhat more conviction-prone than non-death-qualified juries"); *see also Buchanan v. Kentucky,* 483 U.S. 402, 414-420 (1987) ("death qualification" of capital jury did not violate defendant's right to a jury selected from a representative cross section of the community).

Federal district courts are bound by the Supreme Court precedent finding death-qualification of a jury to be constitutional.  *See, e.g., Bowers*, 2020 WL 1675916, at *2 (relying on *Wainright, Morgan,* and *Lockhart* in rejecting defendant's argument that death-qualified jurors are more prone to convict); *United States v. Council*, No. 4:17-CR-00866-RBH, Doc. 404 (D.S.C. May 7, 2019) (rejecting argument that death-qualification violates the First, Fifth, Sixth, and Eighth Amendments and results in a jury not drawn from a fair cross-section of the community); *Roof*, 225 F. Supp. 3d at 416 (rejecting constitutional arguments regarding the death-qualification requirement due to binding Supreme Court precedent); *U.S.A. v. Ciancia*, 2015 WL 13798665, at *2 (C.D. Cal. Sept. 9, 2015) ("[T]he Supreme Court defined the constitutionally permissible bounds of death qualification and mandated the removal of those jurors who would never vote for the death penalty."); *United States v. Green,* 324 F. Supp. 2d 311, 329–30 (D. Mass. 2004) (acknowledging defendants had no constitutional entitlement to a non-death-qualified jury). Here,

Defendant's arguments are contrary to Supreme Court holdings, and this Court declines to stray from this controlling precedent.

### 2. First Amendment and the Religious Freedom Restoration Act

Defendant's final argument is that excluding a juror from a capital jury based on his or her religious beliefs violates the both the First Amendment and the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb-1 ("RFRA").[3] As the Government explains, district courts have rejected similar claims based on the First Amendment and the RFRA.

In *United States v. Ciancia,* the district court rejected a First Amendment challenge. The court stated:

> Even assuming that Defendant has standing to bring his religion-based claims, they fail on the merits because death qualification aims not to interfere with religious freedom but to exclude jurors who are unable to set aside their religious beliefs and apply the law to the facts of the case as instructed. *See Lockhart*, 476 U.S. at 175-76 (finding that death qualification, unlike improper exclusions based on race or gender, serves government's "legitimate interest in obtaining a single jury that can properly and impartially apply the law to the facts of the case ....").
>
> Moreover, death qualification is not an unconstitutional restriction on the free exercise of religion because it serves the legitimate *secular* goal of empaneling juries who will follow their oaths and make sentencing decisions based on fact and law. *See Braunfeld v. Brown*, 366 U.S. 599, 607 (1961) (finding constitutional statute proscribing Sunday retail sale of certain enumerated commodities for purpose of providing citizens with respite from labor, Supreme Court reasoned, "if the State regulates conduct by enacting a general law within its power, the purpose and effect of which is to advance the State's secular goals, the statute is valid despite its indirect burden on religious observance unless the State may accomplish its purpose by means which do not impose such a burden."). Accordingly, the Court concludes that the government is entitled to death qualify Defendant's jurors and DENIES Defendant's motion to prohibit the government from doing so.

---

[3] The RFRA provides that the "Government may not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." § 2000bb-1(a). If the Government substantially burdens a person's exercise of religion, under the Act that person is entitled to an exemption from the rule unless the Government "demonstrates that application of the burden to the person– (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." § 2000bb-1(b).

2015 WL 13798665, at *5; *see also Roof,* 225 F.Supp.3d at 416 ("The 'death qualification' process eliminates from the prospective jury pool only those persons who state that they are unable to render a verdict based on the evidence presented during trial and the Court's instructions on the law. It does not require the Court or the parties to look to the sources of an excluded juror's beliefs.").

In *United States v. Ofomata,* the district court found that the defendant did not meet his burden of demonstrating the death-qualifying process substantially burdens the free exercise of religion. *Ofomata*, 2019 WL 527696, at *10. The court further acknowledged that even if the defendant had met the substantially burdens the free exercise of religion requirement, his RFRA claim fails because "the question of whether a juror is able to follow the law and apply the facts in an impartial way… *is* a compelling government interest." *Id.* at *11 (*quoting Mitchell,* 502 F.3d at 954). The undersigned finds the *Ciancia* and *Ofomata* courts' analyses to be well-reasoned, and for the reasons articulated therein, likewise rejects Defendant's First Amendment and RFRA claims.

### III.   CONCLUSION AND RECOMMENDATION

Based on the foregoing, the undersigned finds Defendant has failed to meet his burden of establishing that the death penalty is unconstitutional punishment as administered under the Federal Death Penalty Act and recommends that Defendant's motion to preclude the death penalty as a punishment be denied.

Accordingly,

**IT IS HEREBY RECOMMENDED** that the Motion to Preclude the Death Penalty as a Punishment because the Federal Death Penalty Act is Unconstitutional be **DENIED** [Doc. 2305].

The parties are advised that they have fourteen (14) days in which to file objections to this recommendation and determination. Failure to file timely objections may result in waiver of the right to appeal questions of fact. *Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990).

 

NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE

Dated this 23rd day of June, 2020.