UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:15CR404   HEA |
| | ) | |
| ANTHONY JORDAN, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant Jordan's Motion to Strike the Government's Notice of Intent to Seek Death Penalty, or in the Alternative, to Strike Certain Aggravating Factors and for other Miscellaneous Relief, [Doc. No. 2306]. The Government opposes the motion and has filed an opposition memorandum and a supplemental Response.   Defendant has replied to both memoranda.

## Factual and Procedural Background

On December 20, 2018, a Fifth Superseding Indictment was returned charging Defendant with one count of conspiracy to distribute and possess with intent to distribute a mixture or substance containing a detectable amount of cocaine, in violation of 21 U.S.C. § 841(a) (Count 1), eleven capital counts of using a firearm in furtherance of a drug-trafficking crime resulting in death, in violation of 18 U.S.C. § 924(c) and (j) (Counts 2-12, and one count of possession

of a firearm in furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924(c))(Count 13).   Special findings are alleged as to Counts 2-12.

The Government filed a Notice of Intent to Seek the Death Penalty also on December 20, 2018 setting forth its intent to seek the death penalty as to Counts 2-12.   The Notice provided the intent factors of: intentionally killing Al Walters, Counts 2-7, 9-11; intentionally inflicting serious bodily injury that resulted in the death of Al Walters, Counts 2-7, 9-11; intentionally participating in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and Al Walters died as a result of the act, Counts 2-12; intentionally and specifically engaging in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and Al Walters died as a direct result of the act, Counts 2-12.

The Notice alleges the following Statutory Aggravating Factors:   Grave risk of death to additional persons, Counts 5-7, 9-10; procurement of offense by payment, Counts 8 and 12; substantial planning and premeditation, Counts 2-12; vulnerability of victim, Count 12; and multiple killings or attempted killings, Counts 2-6, 9-11.

The Notice alleges the following Non-Statutory Aggravating Factors: contemporaneous convictions for multiple episodes of murder, Counts 2-12; contemporaneous conviction for narcotics offense, Counts 2-12; callous disregard for human life, Counts 2-12; pattern of obstruction of justice, Counts 2-12; institutional misconduct, Counts 2-12; victim impact evidence, Counts 2-12; obstruction of justice, Counts 2-4, 12; utilization of law enforcement database, Counts 7 and 11; debilitation injury to others, Counts 9 and 10.

## Constitutionality of the Federal Death Penalty Act

Defendant argues that the Federal Death Penalty Act (FDPA) is unconstitutional because it grants exclusive statutory authority to allege aggravating factors to the prosecutor, and is violative of *Ring v. Arizona*, 536 U.S. 584 (2002).   Defendant acknowledges that the Eighth Circuit has rejected this argument in *United States v. Allen*, 406 F.3d 940, 949 (8th Cir. 2008). In Allen, the Eighth Circuit held that "[w]hile it is true that the FDPA directs the government to charge these factors in a notice of intent to seek the death penalty, nothing in the Act precludes the government from also submitting them to the grand jury for inclusion in the indictment.   This is the practice that the Department of Justice has adopted after *Ring*, and it preserves the constitutionality of FDPA prosecutions."

Defendant, however, urges that *Allen* fails to consider *United States v. Jackson*, 390 U.S. 570 (1968), which cautioned against judicially amending a

3

statute. In *Jackson*, the Court found the death penalty provision of the Federal Kidnapping Act to be unconstitutional. *Jackson*, 390 U.S. at 572. The Act allowed for the death penalty only in those cases where the defendant exercised his/her right to a jury trial. Those defendants who entered a guilty plea or consented to a bench trial avoided a death sentence. The government urged that the court could "cure" the constitutional defects via a number of alternative constructions of the statute. The Court declined, noting that:

> [i]t is one thing to fill a minor gap in a statute – to extrapolate from its general design details that were inadvertently omitted. It is quite another thing to create from whole cloth a complex and completely novel procedure and to thrust it upon unwilling defendants for the sole purpose of rescuing a statute from a charge of unconstitutionality.

*Id.* at 580.

Defendant's contention that the *Jackson* decision is analogous to the situation here. "Unlike the Supreme Court in *Jackson*, this case does not require the Court to 'create from whole cloth a complex and completely novel procedure.' In fact, there is no new 'procedure' that the Court must graft onto the FDPA." *United States v. Mills*, 393 F.Supp.3d 650, 662 (E.D. Mich. 2019). Many courts that have rejected similar arguments. *See United States v. Sampson*, 486 F.3d 13, 22 (1st Cir. 2007) (distinguishing *Jackson* and finding that "the rule against massive judicial rewriting of statutes simply is not implicated" with respect to the FDPA); *United States v. Con-Ui*, Crim. No. 13-123, 2016 WL 9331115, at * 9-10

(M.D. Pa. January 28, 2016) (following the *Sampson* court's reasoning in distinguishing *Jackson*); *United States v. Williams*, Crim. No. 8-70, 2013 WL 1335599, at * 12 (M.D. Pa. Mar. 29, 2013) ("[T]he Court is not persuaded by the Defendant's reliance on *Jackson*"); *United States v. McCluskey*, Crim. No. 10-2734, 2012 WL 13076173, at * 5 (D.N.M. Sept. 24, 2012) ("*Jackson* presents an entirely different scenario, and its reasoning is inapplicable to this case"); and *United States v. Diaz*, Crim. No. 5-167, 2007 WL 656831, at * 5 (N.D. Cal. Feb. 28, 2007).

Because this Court finds that the FDPA does not prohibit statutory aggravating factors from being included in an indictment, this Court is not judicially amending a statute. As such, Defendant's "non-delegation" argument is unpersuasive. *See e.g., United States v. Higgs*, 353 F.3d 281, 321 (4th Cir. 2003) (the FDPA "does not delegate a legislative function to the prosecutor") and *Mills*, 393 F. Supp.3d at 662 ("neither the non-delegation doctrine nor the separation-of-powers doctrine is implicated here").

Defendant urges, in the alternative, that, if the FDPA is constitutional, the indictment violates the Fifth Amendment. He reasons that the grand jury should have been informed of the sentencing consequences of its "Special Findings." "The role of the grand jury is not to find or recommend a sentence of punishment or even to consider such, but rather to investigate possible crimes against the

sovereign so that it can make a judgment whether a trial on specific charges is necessary." *Con-Ui*, 2016 WL 9331115, at *13; *see also United States v. Haynes*, 269 F. Supp.2d 970, 981 (W.D. Tenn. 2003) ("The grand jury's role is not to decide whether probable cause supports the imposition of a particular sentence against a charged individual," rather it is to make an "independent factual determination of the existence of probable cause for the essential elements of the charged offense") (*citations omitted*). Consequently, "[p]rosecutors are not required to inform a grand jury that the decision to return 'special findings' as to aggravating factors will make a defendant eligible for capital punishment." *United States v. Green*, Crim. No. 6-19, 2008 WL 4000902, at *6 (W.D. Ky. Aug. 26, 2008); *see also United States v. Mills*, 393 F. Supp.3d at 665 ("The Fifth Amendment does not require the Government to inform the grand jury of the potential punishment arising out of the grand jury's special findings") and *United States v. Troya*, Crim. No., 6-80171, 2008 WL 4327004, at *8 (S.D. Fla. Sept. 22, 2008) ("The case law is clear that there is no constitutional requirement that the grand jury be informed of the potential punishment arising out of the special findings").

Defendant's contention that the grand jury should have weighed the sentencing factors under § 3593(e) lacks support. Defendant has not identified a

single case endorsing such an approach. The Eighth Circuit's opinion in *United States v. Purkey*, 428 F.3d 738, 750 (8th Cir. 2005) controls.

> [I]t makes no sense to speak of the weighing process mandated by 18 U.S.C. § 3593(e) as an elemental fact for which a grand jury must find probable cause. In the words of the statute, it is a 'consideration,' 18 U.S.C. § 3593, - that is, the lens through which the [petit] jury must focus the facts that it has found to produce an individualized determination regarding "whether the defendant should be sentenced to death, to life imprisonment without possibility of release or some other lesser sentence."

*Purkey*, 428 F.3d at 750 (*quoting Tuilaepa v. California*, 512 U.S. 967, 972 (1994)); *see also United States v. Bowers*, No. CR 18-292, 2020 WL 1675913, at *3–4 (W.D. Pa. Apr. 6, 2020)(quoting *Purkey*); *Con-Ui*, 2016 WL 9331115, at *13 (*citing Purkey*, and stating, "the grand jury does not weigh the factors, the trial jury in the sentencing phase does"); *Williams*, 2013 WL 1335599, at *16 (*citing Purkey* with approval, stating that "the Government fulfilled its obligation to include statutory aggravating factors in the indictment and was not required to present evidence of mitigating factors or require the grand jury to engage in the weighing process mandated by 18 U.S.C. § 3593(e)").

Defendant cites to the decision rendered in *United States v. Green*, 372 F.Supp.2d 168 (D. Mass. 2005), in support of his contention that non-statutory aggravating factors must be pled in the indictment. Because they were not included in the indictment here, he insists these factors must be stricken. This argument has been considered and rejected. *See Bowers*, No. CR 18-292, 2020 WL

1675913(rejecting defendant's citation to *Green*); *Con-Ui*, 2016 WL 9331115, at *13-14 (rejecting the defendant's citation to *Green*, stating "[p]roof of the nonstatutory aggravating factors are not required under the FDPA to find a defendant eligible for the death penalty, but are only considered after a defendant has been deemed death eligible are the aggravating and mitigating factors weighed to determine whether the death penalty will be imposed. Therefore, nonstatutory factors do not increase the maximum penalty to which a defendant may be subjected.") (*citing United States v. LeCroy*, 441 F.3d 914, 922 (11th Cir. 2006)) ("We hold that nonstatutory aggravating factors need not be included in the indictment. Nonstatutory factors are considered only after a defendant has been rendered death-eligible by a finding – from both the grand and petit juries – of the normal elements of the crime (including *mens rea*) and at least one statutory aggravating factor. Nonstatutory factors do not operate to increase the potential punishment of a defendant....")) and *Williams*, 2013 WL 1335599, at *16 (rejecting the defendant's argument under *Green*, noting that "[n]o appellate court ... has held that non-statutory aggravating factors must be set forth in the indictment"). Defendant's motion in this regard is denied.

## Challenges to Statutory Aggravating Factors

Defendant challenges the substantial planning and premeditation aggravating factor as vague and overbroad; that it fails to narrow the class of murders subject to

the death penalty. He also contends the Government has not proffered sufficient evidence to support application of this factor.

The Court agrees with the weight of authority that this statutory aggravating factor is not overbroad, and it sufficiently narrows the class of persons subject to the death penalty.   In *United States v. Christenson*, 2019 WL 1793135 (C.D. Ill April 24, 2019), the Court addressed the same challenges as Defendant.

> Defendant asserts that the statutory aggravating factor of substantial planning and premeditation must be stricken from the NOI because: (a) planning and premeditation by itself is inadequate to narrow the class of murders eligible for the death penalty; (b) the modifying phrase "substantial" fails to adequately inform juries what they must find to impose the death penalty; and (c) federal courts are unable to fashion a construction of "substantial" that would be both narrowing and specific. Doc. 107, at 1–2. Each of these arguments are unpersuasive.

> Defendant's first argument—planning and premeditation by itself is inadequate to narrow the class of murders eligible for the death penalty—is of no moment, since the statutory aggravating factor requires the planning and premeditation to be *substantial. See* 18 U.S.C. § 3592(c)(9). Defendant also argues that the substantial planning and premeditation aggravator "is so broad as to apply to virtually all premeditated killings." Doc. 107, at 1. But that truism applies the incorrect standard. The prohibition on overbreadth of statutory aggravating factors requires that the factor not be applicable to every defendant convicted of murder. *Arave*, 507 U.S. at 474. Under Defendant's logic, the statutory aggravating factor of "multiple killings or attempted killings" (18 U.S.C. § 3592(c)(16) ) would likewise be unconstitutionally broad because it would apply to virtually all murders of more than one person. That same specious argument would invalidate each of the 16 aggravating factors. Applying the correct standard, it is clear that § 3592(c)(9) narrows the class of persons eligible for the death penalty compared to others found guilty of murder because not all murderers substantially plan and premeditate their killings. *Arave*, 507 U.S. at 474.

*        *        *        *        *

9

Defendant also argues that the substantial planning and premeditation aggravator is unconstitutionally vague. Doc. 107, at 6. But as one district court put it, "substantial is one of those everyday words having a common sense core meaning that jurors will be able to understand." *McVeigh*, 944 F. Supp. at 1490 (citing *Tuilaepa*, 512 U.S. at 973). Indeed, the Seventh Circuit itself has noted that

> [t]he vagueness argument has been made and rejected in *United States v. Webster*, 162 F.3d 308, 354 (5th Cir. 1998), among others. After *Jones v. United States*, 527 U.S. 373 (1999), rejected a functionally identical vagueness challenge, there is no room for maneuver. We rely on these decisions and see no constitutional reason why Mikos cannot be sentenced to death for his premeditated murder of a witness.

*United States v. Mikos*, 539 F.3d 706, 715 (7th Cir. 2008) (parallel citations omitted). Every other federal court to consider the issue is in agreement. *see United States v. Bin Laden*, 126 F. Supp. 2d 290, 297 (S.D.N.Y. 2001); *United States v. McCullah*, 76 F.3d 1087, 1110 (10th Cir. 1996), *cert. denied*, 520 U.S. 1213 (1997); *Kaczynski*, 1997 WL 716487 at *25–26; *McVeigh*, 944 F. Supp. at 1490; *Johnson*, 1997 WL 534163 at *4; *United States v. Glover*, 43 F. Supp. 2d 1217, 1225–26 (D. Kan. 1999); *United States v. Davis*, 904 F. Supp. 554, 558 (E.D. La. 1995); *United States v. Spivey*, 958 F. Supp. 1523, 1531 (D.N.M. 1997); *Frank*, 8 F. Supp. 2d at 278.

*United States v. Christensen*, No. 17-CR-20037-JES-JEH, 2019 WL 1793135, at *13–14 (C.D. Ill. Apr. 24, 2019).

Defendant also argues he is entitled to an informational outline as to the factual basis on which the Government intends to show that Defendant's planning and premeditation were substantial. The Court agrees with the reasoning of those courts that have held a pretrial hearing on the sufficiency of the evidence is not warranted.

> [T]he notice to which [Defendant] is entitled, at least at this point in the proceedings, is notice of the aggravating factors on which the prosecution intends to rely, not notice of the *evidence* on which the prosecution intends to rely to prove those aggravating factors. *Solomon,* 513 F.Supp.2d at 538. It is also clear that the evidence supporting the "statutory aggravating factors" on which the prosecution will be permitted to rely is drawn from the "merits phase" of the trial, as that was the only source for such evidence in [Defendant]'s original "eligibility phase." *Cf. Solomon,* 513 F.Supp.2d at 540 ("[I]t appears that much of the evidence the government intends to introduce during the penalty phase will be introduced during the merits phase as well."); *Llera Plaza,* 179 F.Supp.2d at 470 ("[I]t appears that much of the evidence the government intends to introduce during the sentencing phase will be introduced during the guilt phase as well.").

*United States v. Johnson*, 915 F. Supp. 2d 958, 989 (N.D. Iowa 2013), *vacated in part on other grounds*, 764 F.3d 937 (8th Cir. 2014).

## Multiple Killings or Attempted Killings-Duplicative

Defendant argues the multiple killings or attempted killings aggravating factor should be stricken because it is duplicative of the grave risk of death factor. As Defendant recognizes, the Eighth Circuit Court of Appeals has rejected a "duplication of aggravators" challenge.

> Despite the duplication of aggravators in Mr. Purkey's case, we see no basis for the constitutional infirmity of such factors. The Supreme Court has "never before held that aggravating factors could be duplicative so as to render them constitutionally invalid," *Jones* [*v. United States*]*,* 527 U.S. [373,] 398, 119 S.Ct. 2090 [(1999)] (plurality opinion), and we decline to do so when the FDPA avoids arbitrary death sentences by requiring juries to weigh aggravating and mitigating factors rather than to tally the factors on each side and declare a winner based on sheer numbers. *See* 18 U.S.C. § 3593(e). *But see United States v. Tipton,* 90 F.3d 861, 899 (4th Cir. 1996), *cert. denied,* 520 U.S. 1253, 117 S.Ct. 2414 (1997); *United States v. McCullah,* 76 F.3d 1087, 1111–12 (10th Cir.1996), *cert. denied,* 520 U.S. 1213, 117 S.Ct. 1699, 137 L.Ed.2d 825 (1997). The district court's jury instructions bolster this view as applied to Mr. Purkey's case: The district

11

court ensured that the jury would not employ a tally method of evaluating factors when it instructed the jury that "weighing aggravating and mitigating factors . . . is not a mechanical process. In other words, you should not simply count the number of aggravating and mitigating factors. The law contemplates that different factors may be given different weights or values by different jurors."

*United States v. Purkey*, 428 F.3d 738, 761-62 (8th Cir. 2005).

## Grave Risk of Death to Others

Defendant seeks to have the grave risk of death aggravating factor stricken because it is overbroad and vague.   This argument has been rejected by the Eighth Circuit.

We begin with [Defendant]'s claim that the "grave risk of death" statutory aggravating factor[20] was unconstitutionally vague and encompassed too large a class of defendants. The district court instructed the jury that "grave risk of death" meant "a significant and considerable possibility under the circumstances that existed at that time that another person could be killed." (Govt.'s App. at 52–53.) We find no error in the district court's presentation of this aggravating factor to the jury. "Possibility" adequately defines "risk" and "significant and considerable" adequately defines "grave" such that the jury was capable of understanding the commonsense core meaning of the statutory aggravating factor. *See Tuilaepa,* 512 U.S. at 973, 114 S.Ct. 2630. Thus, there is no constitutional vagueness problem. Furthermore, we find that this aggravating factor as interpreted by the district court sufficiently narrows the class of defendants eligible for the death penalty. If no person besides the victim and any codefendants are put at risk of death, or if the risk is not a "significant and considerable possibility," then a defendant would not be eligible for the death penalty. Thus, this aggravating factor complies with the Eighth Amendment. *See Ross,* 165 F.3d at 800 (citing *Brecheen v. Reynolds,* 41 F.3d 1343, 1360 (10th Cir.1994)).

*United States v. Allen*, 247 F.3d 741, 786–87 (8th Cir. 2001), *vacated on other grounds*, 536 U.S. 953 (2002).

## The Vulnerable Victim Statutory Aggravator

12

Defendant moves to strike the vulnerable victim aggravating factor as overbroad, vague, and duplicative.   The Eighth Circuit has foreclosed Defendant's argument that this factor is vague and overbroad.   *United States v. Paul*, 217 F.3d 989, 1001 (8th Cir. 2000).

Defendant also challenges the Government's failure to describe Dante Jones' vulnerability with any specificity.   As the government points out, Jones' "infirmity or physical disability" is well established.   He was confined to a wheelchair.   Defendant has been sufficiently informed of Jones' vulnerability.

### Non-Statutory Aggravating Factors

Initially, Defendant argues that, except for the possibility of victim-impact evidence, the FDPA does not authorize the Government to pursue any non-statutory aggravating factors during a sentencing hearing conducted under § 3593. Defendant asserts that the language of § 3952(c), which provides that the jury "may consider whether any other aggravating factor for which notice has been given exists," contradicts § 3591(a), which provides that a defendant may be sentenced to death only "after consideration of the factors set forth in section 3592 in the course of a hearing held pursuant to section 3593." But § 3592(c) contains only sixteen statutory aggravating factors, and, therefore, non-statutory factors "are not—and could not be—set out in § 3592.

As the Government correctly notes, the Eighth Circuit has held that the

FDPA "explicitly allows" the use of non-statutory aggravating factors.   *Allen*, 247

F.3d at 757.

> There is no statutory inconsistency between § 3591(a) and § 3592(c). Section 3591(a) simply provides that a defendant convicted of a death-eligible offense cannot be sentenced to death unless aggravating factors set forth in § 3592 are considered during a sentencing hearing conducted under § 3593;; it does not prohibit a jury from considering non-statutory aggravating factors during that hearing. *See United States v. Montgomery*, 10 F. Supp. 3d 801, 821 (W.D. Tenn. 2014) ("[Section] 3591(a) does not limit consideration <u>only</u> to the aggravating factors set forth in § 3592, although Congress could have done so." (emphasis in original)). Moreover, while the jury "shall" consider each statutory aggravating factor for which notice has been given during the sentencing hearing to determine whether a sentence of death is justified, § 3592(c) expressly provides that the jury "may" consider whether "any other aggravating factor for which notice has been given exists." This latter phrase of § 3592(c) sets forth non-statutory aggravating factors by providing them to the jury during the sentencing hearing. *See Louis Jones*, 527 U.S. at 378 n.2, 119 S.Ct. 2090 ("The term 'nonstatutory aggravating factor' is used to refer to any aggravating factor that is not specifically described in 18 U.S.C. § 3592. Section 3592(c) provides that the jury may consider 'whether any other aggravating factor for which notice has been given exists.' "). This interpretation is reinforced by § 3593, which provides that the jury "shall consider all the information received during the hearing" and "shall return special findings identifying any aggravating factor or factors set forth in section 3592 found to exist <u>and any other aggravating factor</u> for which notice has been provided under subsection (a) found to exist," 18 U.S.C. § 3593(d) (emphasis added), which "may include factors concerning the effect of the offense on the victim and the victim's family," 18 U.S.C. § 3593(a).

> Accordingly, these two sections of the FDPA, when read together to avoid superfluity, permit the Government to present information during a sentencing hearing relevant to both statutory and non-statutory aggravating factors.

*United States v. Mills*, 393 F. Supp. 3d 650, 671 (E.D. Mich. 2019)(footnote

omitted).

**Non-statutory aggravating factors-Eighth Amendment**

Defendant argues that the use of non-statutory aggravating factors does not constitutionally limit and guide the discretion of the jury.   Defendant's argument, however, fails.   The Supreme Court has held that the statutory aggravating factors "play a constitutionally necessary function" of circumscribing "the class of persons eligible for the death penalty.   *Zant v. Stephens*, 462 U.S. 862, 878 (1983). Thus, the guilt and eligibility phases serve the purpose of narrowing the class of defendants eligible to receive the death penalty by requiring the jury to find the requisite mental state and at least one statutory aggravating factor when the defendant committed the crime. Once a defendant is found to be eligible for the death penalty, the consideration of non-statutory aggravating factors becomes relevant for the purpose of an "individualized determination" based on "the character of the individual and the circumstances of the crime." *Id.* at 879, 103 S.Ct. 2733 (emphasis omitted).   The Eighth Amendment "permits capital sentencing juries to consider evidence relating to the victim's personal characteristics and the emotional impact of the murder on the victim's family in deciding whether an eligible defendant should receive a death sentence."). By permitting the jury to consider statutory, as well as non-statutory aggravating factors, the FDPA allows the jury to render a reasoned, individualized sentencing

15

determination based on a death-eligible defendant's record, personal characteristics, and the circumstances of his or her crime. *Jones v. United States*, 527 U.S. 373, 395 (1999).   "By permitting the jury to consider statutory, as well as non-statutory aggravating factors, the FDPA allows the jury to render a reasoned, individualized sentencing determination based on a death-eligible defendant's record, personal characteristics, and the circumstances of his or her crime." *Mills*, 393 F. Supp. 3d at 672.

### *Ex Post Facto Laws*

Defendant argues that Section 3592 permits the Government to manufacture "out of whole cloth aggravating factors to be applied retroactively to crimes committed before the aggravating factors are identified." This argument has been rejected by the Eighth Circuit in *Allen*:

> We reject Allen's argument, however, because the statutes under which he was convicted make clear that a sentence of death is authorized, and nonstatutory aggravating factors are not used to determine *eligibility* for the death penalty. Thus, proposing nonstatutory aggravating factors to the jury does not in any way alter the definition of the underlying crime for which Allen was convicted, nor does it increase the punishment to which Allen is subjected.[5] *See Walton v. Arizona,* 497 U.S. 639, 648, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990)(finding that aggravating circumstances are not separate penalties or offenses); *Lewis,* 497 U.S. at 782, 110 S.Ct. 3092 (1990) (finding that aggravating circumstances are not elements of any offense).

*Allen*, 247 F.3d at 759.

**Contemporaneous Convictions for Multiple Episodes of Murder**

Defendant next argues that the non-statutory factor for multiple episodes of murder must be stricken because it is duplicative of the underlying offense and another noticed aggravating factor.   He argues that a guilty verdict is not a judgment of conviction for weighing purposes and it is duplicative, either of the substantive crimes in the indictment or of the multiple killings or attempted killings statutory aggravating factor.

Defendant relies on *United States v. Pitera*, 795 F.Supp. 571 (E.D.N.Y. 1992) in arguing that a guilty verdict is not a judgment of conviction.   Reliance, upon *Pitera* however, is misplaced.

> [T]he *Pitera* court carefully confined its holding by pointing out that the government remained "free to proffer evidence of ... additional homicides as *non-statutory* aggravating factors." *Id.* (emphasis in original). Therefore, instead of supporting the defendants' attack on the use of "contemporaneous conviction for other killings" as a non-statutory aggravating factor, *Pitera* undermines it.

*United States v. Llera Plaza*, 179 F. Supp. 2d 464, 488 (E.D. Pa. 2001).

Defendant argues that this factor is unconstitutional because it violates the separation of powers because Congress did not authorize the government to assert these facts as aggravating.   He also asserts that it violates the Eighth Amendment because they do not narrow the class of offenders subject to the death penalty.

[Defendant] next contends that, by affording prosecutors virtually unlimited discretion in identifying and defining nonstatutory aggravating factors, the FDPA impermissibly delegates legislative power to government prosecutors in violation of the separation-of-powers doctrine.

We likewise reject this argument. First the statute does not delegate a legislative function to the prosecutor. The prosecutor's discretion with regard to defining what is a death-eligible offense is wholly circumscribed by the statute's requirement that the jury unanimously find at least one intent factor and one statutory aggravating factor before the defendant becomes death eligible. *Cf. Jones,* 527 U.S. at 376–77, 119 S.Ct. 2090 (noting that, "[e]ven on a finding of intent, ... a defendant is not death eligible unless the sentencing jury also finds that the Government has proved beyond a reasonable doubt at least one of the statutory aggravating factors set forth at § 3592"). Only after the selection of those critical, legislatively-defined factors is made is the prosecutor afforded discretion to argue that additional nonstatutory aggravators combine with the statutory aggravators to outweigh any mitigating factors that have been submitted for consideration, thus assisting the jury in its task of determining whether a death-eligible defendant should indeed receive that maximum sentence. *See, e.g., id.* at 377–78, 119 S.Ct. 2090; *Jones,* 132 F.3d at 240.

*United States v. Higgs*, 353 F.3d 281, 321 (4th Cir. 2003).

As discussed *supra*, non-statutory aggravating factors need not narrow the class of offenders subject to the death penalty, rather, they provide for an individualization determination.

[S]tatutory aggravating circumstances play a constitutionally necessary function at the stage of legislative definition: they circumscribe the class of persons eligible for the death penalty. *But the Constitution does not require the jury to ignore other possible aggravating factors* in the process of selecting, from among that class, those defendants who will actually be sentenced to death. What is important at the selection stage is an *individualized* determination on the basis of the character of the individual and the circumstances of the crime.

*Zant v. Stephens*, 462 U.S. 862, 878–79 (1983) (emphasis added); *see also*

*Simmons v. South Carolina*, 512 U.S. 154, 162 (1994).

> [N]on-statutory aggravating factors need not narrow the class of defendants eligible for the death penalty at all. "[N]on-statutory aggravators play no role in the eligibility determination under the FDPA, but are relevant only in the weighing process at the ensuing sentence-selection stage." *Fields*, 516 F.3d at 944–45; *United States v. Higgs*, 353 F.3d 281, 299 (4th Cir. 2003); *United States v. Solomon*, 513 F. Supp. 2d 520, 534 (W.D. Pa. 2007) ("Once the jury has narrowed the class of defendants by finding guilt, the gateway *mens rea*, and at least one statutory aggravating factor, the focus appropriately shifts to providing the sentencer with all possible relevant information to enable it to tailor its verdict to the individual before it.").

*United States v. Christensen*, No. 17-CR-20037-JES-JEH, 2019 WL 1793135, at *4 (C.D. Ill. Apr. 24, 2019).

Defendant also argues that the non-statutory aggravating factor of multiple episodes of murder implicates the same evidence as in the statutory aggravating factor that Defendant intentionally killed more than one person in a single criminal episode.

This non-statutory aggravator does not duplicate the offense or the multiple killings or attempted killings statutory aggravator.   This non-statutory factor alleges that defendant will have been convicted of murders committed on separate and distinct dates as opposed to killing more than one individual in a single criminal episode.   Moreover, multiple episodes of murder are not elements of Section 924(c) and (j).

**Contemporaneous Conviction for Narcotics Offense**

Defendant's argument regarding the requirement for a conviction rather than a jury verdict has been discussed and rejected, *see supra*.

Defendant claims that this non-statutory aggravator is not sufficiently relevant because it does not rise to the level of a sufficiently serious crime.   The Court disagrees.   As the Court in *United States v. Bolden*, 545 F.3d 609, 617 (8th Cir. 2008)(footnote omitted) concluded with respect to the statutory aggravating factor of prior non-violent drug conviction, "Congress has repeatedly enacted severe sentencing enhancements for recidivist drug traffickers. *See* 21 U.S.C. § 841(b). We conclude that § 3592(c)(10) identifies circumstances that reasonably justify imposition of a more severe sentence for murder." *Id*. The same applies to Defendant's argument regarding the narcotics offense non-statutory aggravator.

**Callous Disregard for Human Life**

The Government has alleged the callous disregard for human life non-statutory aggravating factor for each of Counts 2 through 12. Within its notice, the Government sets out four subsections which provide the factual bases supporting the factor. Defendant moves to dismiss the aggravating factor, arguing several grounds for dismissal:   the allegations are unconstitutionally vague; are unreliable; lack particularized relevance and seriousness to be introduced in a capital sentencing; and are potentially unfairly inflammatory and confusing.

Initially, Defendant argues the aggravator is unconstitutionally vague and provides insufficient notice.   Because the aggravator alleges that Defendant has demonstrated a callous disregard for human life evidenced by, "but not limited to, one or more of the following," Defendant claims the aggravator can distract the jury from focusing on whether there is sufficient evidence to support the factor. As the Government points out, it included this phrase in case it discovers additional relevant conduct and has no intention of including this language in jury instructions.   Defendant's challenge in this regard is denied.

Defendant next contends "callous disregard" does not have a commonsense core meaning that jurors can understand. To the contrary, "callous disregard" has been found to withstand vagueness challenges.

A factor is not unconstitutionally vague if it possesses "some 'common-sense core of meaning ... that criminal juries should be capable of understanding....' " *Tuilaepa,* 512 U.S. at 973, 114 S.Ct. 2630 (1994) (quoting *Jurek v. Texas,* 428 U.S. 262, 279, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976) (White, J., concurring in judgment)). However, "the proper degree of definition" required to withstand a vagueness challenge falls well short of "mathematical precision." *Id.* (quoting *Walton v. Arizona,* 497 U.S. 639, 655, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990)). Moreover, a relevant aggravating factor is one that assists the jury "in distinguishing 'those who deserve capital punishment from those who do not....' " *United States v. McVeigh,* 944 F.Supp. 1478, 1488 (D.Colo.1996) (quoting *Creech,* 507 U.S. at 474, 113 S.Ct. 1534); *accord Johnson,* 136 F.Supp.2d at 558 ("[T]he aggravating factor must be sufficiently relevant to the question of who should live and who should die.") (internal quotations omitted). Courts have often emphasized that relevant evidence is "particularized to the individual defendant." *United States v. Chong,* 98 F.Supp.2d 1110, 1116 (D.Hawai'i 1999) (citing *United States v. Frank,* 8 F.Supp.2d 253, 279 (S.D.N.Y.1998)). If the aggravating factor bears only a "tangential relationship" to whether the

21

defendant deserves the death penalty, it should be excluded. *Rivera,* 405 F.Supp.2d at 668. Finally, aggravating factors are not duplicative unless they substantially overlap, or the elements of one necessarily include the elements of another. *Regan,* 228 F.Supp.2d at 751.

Callous Disregard is neither unconstitutionally vague nor irrelevant. As is noted *supra,* general constitutional challenges to Lack of Remorse, a similar factor, have failed. *See Cooper,* 91 F.Supp.2d at 112–13; *Nguyen,* 928 F.Supp. at 1541 (both citing *Zant,* 462 U.S. at 885 n. 22, 103 S.Ct. 2733) In order to prove his callous disregard for the severity of these offenses, the government will have to show that the defendant, through his words and actions, failed to appreciate the gravity of killing two human beings. This has a "common-sense core of meaning" sufficient to overcome any vagueness concerns. *Jurek,* 428 U.S. at 279, 96 S.Ct. 2950 (White, J., concurring). Moreover, the factor is also relevant, because whether the defendant appreciated the gravity of his actions relates to his individual character and provides one legitimate basis to distinguish whether the death penalty is justified in this particular case. *Creech,* 507 U.S. at 474, 113 S.Ct. 1534. Thus, Callous Disregard is sufficient to overcome vagueness and relevance challenges.

*United States v. Umana*, 707 F. Supp. 2d 621, 638–39 (W.D.N.C. 2010).

Defendant next contends that this factor must be stricken because of unanimity problems.   As the Government argues, the subparts are set out to notify Defendant of the conduct it will use to establish the factor; the subparts do not require unanimity, rather, the factor itself does.   Defendant's argument regarding subpart unanimity is unavailing.

Defendant also challenges the specific sub-parts proposed to support the callous disregard non-statutory aggravating factor.   Defendant first challenges the Government's proposed evidence of unadjudicated criminal conduct.

**Participation in other murders and acts of violence**

22

Evidence of prior unadjudicated offenses is not per se inadmissible on constitutional grounds. *Brown v. Dretke*, 419 F.3d 365, 376–77 (5th Cir. 2005); *Hall*, 152 F.3d at 404.   Since the unadjudicated conduct is offered in support of the non-statutory aggravating factor, as discussed *supra*, this evidence is not individually subject to proof beyond a reasonable doubt. Under the FDPA, the Federal Rules of Evidence do not apply to the admissibility of evidence during the penalty phase, and the Court may exclude evidence if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury. 18 U.S.C. § 3593(c). *United States v. George*, 2020 WL 2812864, at *4 (E.D. La. May 29, 2020).   If the need arises, the Court will, at the penalty phase, consider the specific evidence in support the callous disregard for human life factor under the appropriate standards.

**Abuse and Lack of Respect for the Deceased**

Defendant seeks dismissal of evidence regarding Defendant's abuse and lack of respect for the dead in support of the callous disregard for human life factor. Defendant argues that in order for the jury to consider this evidence, it must be criminal and serious in nature.   Defendant misconstrues the nature and purpose of the proposed evidence.   The Government proposes to offer evidence of Defendant's abuse and lack of respect to prove the callous disregard non-statutory aggravating factor; this evidence is not offered as a stand-alone aggravating factor.

The admissibility of the evidence for this purpose need not be stricken. Rather, the Court, as with the unadjudicated conduct, will, if necessary, assess the admissibility of such evidence under the appropriate standard for evidence in support of the factor.

**Possession of Weapons**

Defendant challenges any evidence of possession of weapons in support of the callous disregard for human life non-statutory aggravating factor.   Originally, Defendant argued that evidence of recovery of weapons from residences associated with fellow narcotics trafficker and co-conspirator Washington.   The Government has supplemented its response and has identified weapons recovered from a residence associated with fellow narcotics trafficker and co-conspirator Keys. Defendant argues that any evidence of conduct indirectly associated with him should be stricken, while the Government contends that this evidence still speaks of Defendant's character.   The Court agrees with Defendant that the conduct of others cannot be used to punish Defendant.   The two instances of recovery of weapons at residences other than Defendant's will be stricken.

Defendant also challenges the evidence of possession of weapons as violative of his Second Amendment rights.   The Government argues that this evidence does not violate the Second Amendment because Defendant possessed and used the firearms in furtherance of drug trafficking, 18 U.S.C. § 924(c)(1)(A).

24

Indeed, the Court agrees that that evidence of use of firearms in furtherance of drug trafficking is sufficiently serious to establish callous disregard for human life. As such, the evidence falling within Section 924(c)(1)(A) can be used to support the callous disregard factor.

Likewise, the Court is unpersuaded that evidence of the August 28, 2004 firearm evidence should be stricken because the risk of misleading the jury into thinking that Defendant is intrinsically bad does not outweigh the probative value of this evidence.

**Lack of Remorse**

Defendant's duplicative argument is foreclosed by *Purkey*, 428 F.3d at 762.

The Government notified Defendant that it intended to present evidence of his statements and actions during the course of and following the offense and the contents of one or more cell phones on which he stored information memorializing violent acts he committed.   Defendant claims this is unconstitutionally vague. The Court disagrees. From this notice, Defendant is apprised of what the Government intends to submit as evidence of his lack of remorse through what he said and what he did, which information he kept on his cell phones.   "Any lawful evidence which tends to show the motive of the defendant, his lack of remorse, his general moral character, and his predisposition to commit other crimes is admissible in aggravation."   *Zant*, 462 U.S. at 866 n. 22.

25

**Pattern of Obstruction of Justice and Obstruction of Justice Non-Statutory Aggravators**

Defendant seeks dismissal of the Pattern of Obstruction of Justice and Obstruction of Justice non-statutory aggravators for a number of reasons.   Several reasons used with respect to these have been presented as to others.   The Court's denial for those reasons are discussed, *supra*.

Defendant argues these non-aggravating factors should be stricken as overbroad, vague for lack of a common-sense core of meaning, not sufficiently noticed, duplicative. The Court disagrees. The Government has given Defendant notice of these factors and the basis upon which it has presented them.

The Government sets forth facts which it will use to support these factors:

JORDAN has engaged in a pattern of obstruction of justice by attempting to influence, obstruct or impede the due administration of justice including, but not limited to: (a) making efforts to influence, threaten, or endanger one or more cooperating witnesses; (b) disclosing or attempting to disclose to other [sic] the identity of one or more cooperating witnesses; and (c) planning to harm the family member(s) of one or more cooperating witnesses.

The Government also alleges that

In an effort to obstruct justice, JORDAN killed AL WALTERS, who was a suspected law enforcement cooperator, and LINNIE JAC KSON and KEITH BURKS, who were riding in the car with AL WALTERS.

And,

In an effort to obstruct justice, JORDAN arranged for the murder of DANTE JONES, who was a suspected law enforcement cooperator.

26

Defendant argues that the aggravator is overbroad because the alleged conduct occurs too frequently in murder cases. "Rare, indeed, is the perpetrator of a murder who is indifferent to his chances of being apprehended and punished by authorities and who does not take steps to attempt to avoid that outcome." Doc. 101, at 5 (citing *United States v. Jacques*, No. 2:08-cr-117 at 58 (D. Vt. May 4, 2011) (as cited in Defendant's Motion), *but see* Doc. 177, at 1 (Defendant's Reply) ("Mr. Christensen plainly did not assert that the opinion [in *Jacques*] stands for the proposition that 'a murderer would naturally take steps to avoid being caught.' ") ). *Jacques* is inapposite for two reasons. First, unlike the "deception of the justice system" aggravator in *Jacques*, which merely alleged that the defendant had manipulated the State into believing he was rehabilitated, the obstruction aggravator alleged by the United States here relies on alleged false statements to investigators, destroying or concealing the victim's remains, and sanitizing the crime scene. *Cf. United States v. Jacques*, No. 2:08-CR-117, 2011 WL 1675417, at *22 (D. Vt. May 4, 2011), *aff'd in part, vacated in part*, 684 F.3d 324 (2d Cir. 2012). Not every murderer makes false statements to investigators, destroys or conceals the victim's remains, or sanitizes the crime scene. *See, e.g., United States v. Roof*, 225 F. Supp. 3d 413 (D.S.C. 2016). Thus, the obstruction of justice aggravator here does narrow the class of defendants potentially eligible for the death penalty, and is therefore not overbroad. *see Fields*, 516 F.3d at 944–45.

Second, non-statutory aggravating factors need not narrow the class of defendants eligible for the death penalty at all. "[N]on-statutory aggravators play no role in the eligibility determination under the FDPA, but are relevant only in the weighing process at the ensuing sentence-selection stage." *Fields*, 516 F.3d at 944–45; *United States v. Higgs*, 353 F.3d 281, 299 (4th Cir. 2003); *United States v. Solomon*, 513 F. Supp. 2d 520, 534 (W.D. Pa. 2007) ("Once the jury has narrowed the class of defendants by finding guilt, the gateway *mens rea*, and at least one statutory aggravating factor, the focus appropriately shifts to providing the sentencer with all possible relevant information to enable it to tailor its verdict to the individual before it."). " 'Obstruction of Justice' is a proper non-statutory aggravating factor, for acts committed either at the same time as the charged offenses or afterward." *McCluskey*, 2013 WL 12329344, at *21 (citing *United States v. Bolden*, 545 F.3d 609, 612-13, 624 (8th Cir. 2008) ); *Higgs*, 353 F.3d at 322–23. Accordingly, the obstruction aggravator is not overbroad.
*(b) Vagueness*

Defendant next argues that the obstruction aggravator is unconstitutionally vague, reasoning that the proposed aggravator "offers the jury no guidance whatsoever on how to make the determination of whether Mr. Christensen's alleged conduct constitutes obstruction of an investigation." Doc. 101, at 6. Again, an aggravating factor is not unconstitutionally vague "if it has some common-sense core of meaning ... that criminal juries should be capable of understanding." *Tuilaepa*, 512 U.S. at 973 (internal quotations omitted). Here, the obstruction aggravator alleged by the United States relies on alleged false statements to investigators, destroying or concealing the victim's remains, and sanitizing the crime scene. The Court is confident that the obstruction aggravator, as alleged here, has a commonsense meaning easily understood by jurors. *McCluskey*, 2013 WL 12329344, at *21; *Bolden*, 545 F.3d at 624; *Higgs*, 353 F.3d at 322–23. Accordingly, the obstruction factor is not unconstitutionally vague.

*(c) Relevance*

Lastly, Defendant argues that the obstruction aggravator is not relevant to the jury's sentencing determination because (1) the alleged conduct is insufficient to establish the crime of obstruction, and (2) the alleged conduct is insufficient to justify an enhancement of a non-capital sentence under the Sentencing Guidelines. Doc. 101, at 7–8. At a sentencing hearing under the FDPA, "information may be presented as to any matter relevant to the sentence, including any mitigating or aggravating factor permitted or required to be considered under section 3592." 18 U.S.C. § 3593(c). The FDPA does not define "relevance" itself, but at least two circuit courts have applied the definition of relevance found in Federal Rule of Evidence 401. *see United States v. Lujan*, 603 F.3d 850, 854 (10th Cir. 2010) ("Although § 3593(c) fails to define 'relevant,' we have interpreted it as 'the same standard used throughout the federal courts under Federal Rule of Evidence 401.' "); *United States v. Basham*, 561 F.3d 302, 331–32 (4th Cir. 2009) (defining § 3593(c) relevance with the Federal Rule of Evidence 401 definition).

Defendant urges the Court to adopt a more demanding standard for relevance than provided by FRE 401, but only for the United States. *See* Doc. 177, at 7 (citing *United States v. Friend*, 92 F. Supp. 2d 534, 543 (E.D. Va. 2000) (defining relevance for evidence used to support nonstatutory aggravating factor as "an issue which (a) is of sufficient seriousness in the scale of societal values to be weighed in selecting who is to live or die; and (b) is imbued with a sufficient degree of logical and legal probity to permit

the weighing process to produce a reliable outcome.") ). The Court declines to do so. First, the Court sees no reason to define relevance one way for the United States and another way for Defendant. Rather, the relevance of evidence should depend on whether "it has any tendency to make a fact more or less probable than it would be without the evidence[,] and the fact is of consequence in determining the action." Fed. R. Evid. 401. Defendant's concerns about the probity and heightened reliability of such evidence are better addressed under 18 U.S.C. § 3593(c)'s balancing test. *See* § 3593(c) ("Information is admissible regardless of its admissibility under the rules governing admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury."). Applying the above principles, Defendant's alleged conduct—false statements to investigators, destroying or concealing the victim's remains, and sanitizing the crime scene—is clearly relevant to the character of Defendant and the circumstances of the crime. *Higgs*, 353 F.3d at 323 ("[W]e have no doubt that Higgs's destruction of evidence and tampering with witnesses in order to cover his tracks, impede the investigation into the murders, and increase his chances of being acquitted were highly relevant aggravating circumstances which were properly submitted to the jury for its consideration in making the requisite individualized determination."); *Lujan*, 603 F.3d at 854.

*United States v. Christensen*, No. 17-CR-20037-JES-JEH, 2019 WL 1793135, at *3–5 (C.D. Ill. Apr. 24, 2019).

The Court agrees.   The Government has given Defendant notice of the facts and circumstances upon which the jurors can consider in aggravation.

These two aggravators, likewise, are not duplicative.   As the Government argues, the obstruction of justice aggravators as to Counts 2, 3, 4, and 12 reflect the motives for charged murders.   The Pattern of obstruction of justice aggravator is set out based on Defendant's efforts to influence or threaten cooperating witnesses

during the investigation and prosecution of Defendant and the co-conspirators. These aggravators encompass different motives and conduct.

**Institutional Misconduct Non-Statutory Factor**

Defendant challenges the institutional misconduct of his hunger strike, alleged bribes of agency personnel and threats to agency personnel and the family of agency personnel.   Defendant claims that his hunger strike is protected First Amendment activity. With regard to the bribes and threats, Defendant argues that there is insufficient detail, it is trivial, not particularly relevant, and unreliable.

The Government contends that the hunger strike was an attempt to be transferred to a less restrictive institution, with the goal of either escaping, or otherwise being able to flout security precautions at facilities.

At this point, the Court agrees with Defendant that the reasons given by the Government appear to be speculation (the hunger strike motive), insufficiently serious in nature, or not specific enough with regard to "personnel," in relation to the crimes charged to factor into the life or death assessment under applicable authority. The Government will be given leave to supplement its notice with regard to this non-statutory aggravating factor.

**Victim Impact Non-Statutory Factor**

The Supreme Court recognized the constitutionality of victim impact testimony in *Payne v. Tennessee*, 501 U.S. 808, 827 (1991) (holding that the

Eighth Amendment erects no per se bar to the introduction of victim impact evidence at a capital sentencing hearing; *see also United States v. Snarr*, 704 F.3d 368, 402 (5th Cir. 2013) ("Because victim impact evidence relates to the harm caused by the defendant, *Payne* held that it is relevant to the jury's assessment of "the defendant's moral culpability and blameworthiness.") (internal quotations omitted); *United States v. George*, No. CR 17-201, 2020 WL 4584200, at *2 (E.D. La. Aug. 10, 2020); *United States v. Sampson*, 332 F. Supp. 2d 325, 338 (D. Mass. 2004) (observing that since *Payne*, victim impact testimony is a "regular, legitimate feature" of federal capital cases).

Defendant argues that any victim evidence must be limited to "evidence relating to the personal characteristics of the victim and the emotional impact of the crimes on the victim's family," *Payne*, 501 U.S. at 817; gives only a "glimpse of the life" of the victim, *Id* at 822; cannot include "victim's family members' characterizations and opinions about the crime, the defendant, and the appropriate sentence," *Bosse v. Oklahoma*, 137 S.Ct 1, 2 (2016)(*per curiam*); the victim impact evidence must be relevant and not consist of "a 'mere emotional plea'" unrelated to the impact of the crime on the victims or their families, *Sampson*, 335 F.Supp.2d at 187; and victim impact evidence that is "so unduly prejudicial that it renders the trial fundamentally unfair" violates due process, *Payne*, 501 U.S. at 825.

Pursuant to 18 § U.S.C. § 3593(a), the factors for which notice is provided "may include factors concerning the effect of the offense on the victim and

the victim's family, and may include oral testimony, a victim impact statement that identifies the victim of the offense and the extent and scope of the injury and loss suffered by the victim and the victim's family, and any other relevant information." Victim impact evidence "inform[s] the sentencing authority about the specific harm caused by the crime in question," which is relevant to the jury's sentencing decision. *Payne*, 501 U.S. at 823, 825; [*United States v.*] *Bernard*, 299 F.3d [467,] 477 (5th Cir. 2002). "Victim impact evidence is admissible unless it 'is so unduly prejudicial that it renders the trial fundamentally unfair' in violation of a defendant's Due Process rights.'" *Bernard*, 299 F.3d at 477 (quoting *Payne*, 501 U.S. at 825);

*United States v. George*, No. CR 17-201, 2020 WL 2812864, at *8 (E.D. La. May 29, 2020).

The Government's notice provides:

JORDAN caused injury, harm, and loss to the family of [VICTIM] as evidenced by [VICTIM'S] personal characteristics as an individual human being and the impact of his [or her] death upon his [or her] family and friends.

Defendant claims this allegation fails to provide adequate notice because it fails to adequately identify who the family members and friends are and the nature of the alleged "injury, harm, and loss" to these individuals.

The Government informs the Court that prior to trial, Defendant will receive a list of witnesses and will provide any exhibits it intends to introduce through victim family members prior to their testimony.

Defendant also argues that this factor fails to provide any narrowing function.   As previously discussed, *supra*, the non-statutory factors need not

provide a narrowing function, but rather are for the purposes of an individualized sentencing.

Defendant seeks to limit the Government to family, and exclude any friends, coworkers, colleagues.

Defendants are correct that when authorizing victim impact testimony, the Supreme Court and FDPA speak of family. *See, e.g., Payne,* 501 U.S. at 827 ("A State may legitimately conclude that evidence about the victim and about the impact of the murder on the *victim's family* is relevant to the jury's decision as to whether or not the death penalty should be imposed.") (emphasis added); *Jones v. United States*, 527 U.S. 373, 395 (1999) (capital sentencing juries may "consider evidence relating to the victim's personal characteristics and the emotional impact of the murder on the *victim's family* in deciding whether an eligible defendant should receive a death sentence.") (emphasis added); § 3593(a) (stating that the government may introduce victim impact evidence including "oral testimony, a victim impact statement that identifies the victim of the offense and the extent and scope of the injury and loss suffered by the victim and the *victim's family*, and any other relevant information.") (emphasis added).

However, courts in numerous circuits, have admitted victim impact testimony from individuals outside of the victim's family. *See United States v. Bernard*, 299 F.3d 467, 477 (5th Cir. 2002) (victim impact testimony offered by

the parents of the victims and by a friend who was also a victim's former co-worker); *Lawrence*, 735 F.3d at 405 (affirming the district court's decision to allow a police officer who served with the victim to testify); *Runyon*, 707 F.3d at 484-85 (affirming the admission of testimony from co-workers, Navy shipmates); *United States v. Whitten*, 610 F.3d 168, 188 (2d Cir. 2010) (holding "the Constitution allows evidence from non-family members about their own grief"); *United States v. Bolden*, 545 F.3d 609, 626–27 (8th Cir. 2008) (upholding the admission of testimony from the victim's "friends, coworkers and pastor" about the victim's "relationship with his girlfriend, career aspirations, and the affect [*sic*] of [the victim's] death on his parents."); *United States v. Nelson*, 347 F.3d 701, 712 (8th Cir. 2003) (upholding the admission of testimony from the victim's classmate, teacher, and a friend); *United States v. Battle*, 173 F.3d 1343, 1348–49 (11th Cir. 1999) (approving the admission of victim impact testimony from three prison guards who described the harm caused at the prison by the murder of the victim correctional officer); *United States v. Paul*, 217 F.3d 989, 995 (8th Cir. 2000) (upholding the admission of testimony from the victim's co-worker).

The Court rejects Defendant's argument that victim impact evidence is limited to family members.   *United States v. George*, No. CR 17-201, 2020 WL 4584200, at *5 (E.D. La. Aug. 10, 2020).

Defendant argues that the evidence must be limited to a "glimpse into the life" of the victims. The Government counters that it is allowed to present a complete exploration of the victim's personal characteristics.

> [Th]e FDPA permits the government to present "oral testimony, a victim impact statement that identifies the victim of the offense and the extent and scope of the injury and loss suffered by the victim and the victim's family, and any other relevant information." § 3593(a). This testimony should be designed to show each victim's "uniqueness as an individual human being...." *Payne*, 501 U.S. at 823; *see also Jones v. United States*, 527 U.S. 373, 399 (1999) ("the victim's individual uniqueness").
>
> Demonstrating the victim's "uniqueness as an individual human being" to a sentencing jury can be accomplished without hazarding the unfairly prejudicial risk of a "fulsome" discussion of the victim's whole "life history" or "complete exploration" of the victim's personality. Capital sentencing is required to focus on facts about the defendant or the circumstances of the offense that make the case stand out among other murder cases. *See Zant v. Stephens*, 462 U.S. 862, 877 (1983). Victim impact testimony is "simply another form or method of informing the sentencing authority about the specific harm caused by the crime in question...." *Payne*, 501 U.S. at 825. § 3593(c).

*George*, No. CR 17-201, 2020 WL 4584200, at *4 (E.D. La. Aug. 10, 2020).   The Government is not required to provide a more definite statement as to the specific victim impact evidence.

**Utilization of Law Enforcement Database(s)**

Defendant argues that the non-statutory factor of conspiring to access law enforcement database(s) for the unlawful purpose of gathering information concerning [VICTIM].   This factor is sufficiently "relevant to the . .

.circumstances of the crime" to allow it.   *Barclay*, 463 U.S. at 967; *Zant,* 462 U.S. at 878.

**Debilitating Injury to Others**

Defendant seeks dismissal of the debilitating injury to others non-statutory factor because he claims it is unconstitutionally vague in that it is unclear what the Government means by "debilitating."   The notice provides that Defendant caused a debilitating injury to Courtney Ivy who was struck in the head by a bullet during the course of the commission of the offense.   The Government advises that it intends to establish that Courtney Ivy suffered serious impairment of strength or ability to function.   This evidence would fall within the common definition of "debilitating." Defendant's confusion as to the meaning of debilitating is without merit.

Defendant also argues that this factor is subsumed by the grave risk of death aggravating factor.   The Government is correct that the two are distinct and separate factors.   Grave risk of death does not require any injury, whereas debilitating injury by definition requires some type of injury.   Furthermore, even assuming duplication, the Eighth Circuit has rejected such a claim.   *See Purkey*, 428 F.3d at 762.

Finally, this factor relates to the circumstances of the offense.   The Government contends that Defendant inflicted the injury while murdering another person.

## Conclusion

Based upon the foregoing analysis, Defendant's Motion to Strike is granted in part and denied in part as provided herein.

Dated this 15th   day of September, 2020.

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE