UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. S-5 4:15 CR 404 HEA (NAB) |
| | ) | |
| ANTHONY JORDAN (3), | ) | |
| | ) | |
| Defendant. | ) | |

**RESPONSE FOR THE UNITED STATES TO
DECLARATION IN SUPPORT OF JORDAN'S MOTION TO
BAR PROSECUTION OF COUNTS 2 THROUGH 12**

COMES NOW the United States of America and states as follows in response to the Declaration in Support of Defendant Anthony Jordan's Motion to Bar the Government from Proceeding on Counts 2 Through 12 on the Basis of Judicial Estoppel (Doc. 2944).

**INTRODUCTION**

On June 5, 2020, defendant Anthony Jordan filed a motion to bar the government from proceeding on Counts 2 through 12 of the Fifth Superseding Indictment, which charge Jordan with 11 counts of murder by using a firearm while engaged in a drug trafficking crime, in violation of 18 U.S.C. 924(j)(1), on grounds of judicial estoppel.  Doc. 2667.  The government opposed the motion, Doc. 2752, and Jordan filed a reply, Doc. 2760.  The briefing on the motion was complete in August 2020.  On January 14, 2021, Jordan filed a "Declaration in Support" of his judicial estoppel motion.  Doc. 2944.  The declaration is written by two retired Department of

1

Justice employees who offer the opinion that the United States' decision to charge 11 counts of Section 924(j) murder in this case is inconsistent with an internal Department policy.  This response is submitted to confirm that the government's charging decision in this case is consistent with Department of Justice policy and that the views expressed in the declaration do not reflect the views of the Department of Justice.

## BACKGROUND

### A.    Statutory Background

#### 1.    Section 924(c)

Section 924(c)(1) of Title 18 of the U.S. Code provides that "any person who, during and in relation to any crime of violence or drug trafficking crime . . . , uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime" receive a sentence of "not less than 5 years."  18 U.S.C. 924(c)(1)(A)(i).

Section 924(c) provides for a higher mandatory minimum sentence if the firearm was brandished or discharged, 18 U.S.C. 924(c)(1)(A)(ii) and (iii), or if the firearm was a short-barreled rifle or shotgun, a semiautomatic assault weapon, or a machinegun or destructive device, 18 U.S.C. 924(c)(1)(B)(i) and (ii).  It also provides a mandatory minimum sentence of 25 years if the defendant has a prior Section 924(c) conviction "that has become final."  18 U.S.C. 924(c)(1)(C)(i).  The sentence for a Section 924(c) offense must run consecutively to any other sentence.  18 U.S.C. 924(c)(1)(D)(ii).

### 2. Section 924(j)

Section 924(j) of Title 18 of the U.S. Code punishes those who cause the death of another person while using a firearm during or in relation to a crime of violence or drug trafficking crime.  It provides that:

(j)    A person who, in the course of a violation of subsection (c), causes the death of a person through the use of a firearm, shall –

    (1)    if the killing is a murder (as defined in section 1111), be punished by death or by imprisonment for any term of years or for life; and

    (2)    if the killing is manslaughter (as defined in section 1112), be punished as provided in that section.

18 U.S.C. 924(j).

### B. Procedural Background

### 1. The Indictment

In December 2018, a federal grand jury in the Eastern District of Missouri returned a Fifth Superseding Indictment charging Jordan with one count of conspiracy to distribute and possess with intent to distribute cocaine from January 1, 2002, to August 27, 2015, in violation of 21 U.S.C. 841(b)(1)(A)(ii)(II) and 846 (Count 1); 11 counts of murder by using a firearm while engaged in a drug trafficking crime, in violation of 18 U.S.C. 924(j) (Counts 2-12); and one count of possessing one or more firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. 924(c)(1)(A) (Count 13).  Doc. 1990, at 1-25.[1]

---

[1]    All citations to page numbers are to the ECF page number stamp.

Each of the Section 924(j)(1) murder counts (Counts 2-12) involved a different murder victim and was alleged to have occurred during the drug conspiracy charged in Count 1. Doc. 1990, at 3-24. The Section 924(c)(1) count (Count 13) alleged that Jordan had possessed a firearm in furtherance of the drug trafficking conspiracy charged in Count 1 on five different dates, but did not allege that those instances of firearm possession resulted in death. See *id.* at 25.

### 2.    The 1999 Memorandum

In 1999, Assistant Attorney General James K. Robinson issued a memorandum (1999 Memorandum) directing all prosecutors to base each Section 924(c) count in an indictment upon a separate predicate offense.[2] The 1999 Memorandum explained that the courts of appeals were divided "on the question whether the proper unit of prosecution under Section 924(c) is the using/carrying of a firearm or the commission of the predicate offense." Doc. 2667, at 34. As the 1999 Memorandum explained, if the proper unit of prosecution is the using/carrying of a firearm, then a single drug trafficking conspiracy could support multiple convictions under Section 924(c). *Ibid.* If the proper unit of prosecution for using/carrying a firearm is the underlying predicate offense, then a predicate crime could only support a single Section 924(c) conviction. *Ibid.*

This mattered because, at the time, the sentencing formula for Section 924(c) provided for a five-year mandatory minimum sentence for a first offense and a

---

[2]    The 1999 Memorandum is reproduced in the Appendix to Jordan's motion to dismiss. See Doc. 2667, at 34-37.

mandatory consecutive 25-year sentence "[i]n the case of a second or subsequent conviction under this subsection."  18 U.S.C. 924(c)(1)(C)(i) (1998).  In *Deal* v. *United States*, 508 U.S. 129 (1993), the Supreme Court had construed the statutory term "second or subsequent conviction" in Section 924(c) to include a defendant's second and subsequent counts of conviction under Section 924(c) even when those convictions are entered "in [a] single proceeding" along with the defendant's first Section 924(c) conviction.  508 U.S. at 131-134.[3]  As a result, charging multiple instances of using or carrying a firearm during a drug trafficking crime would result in "stacking" consecutive 25-year sentences together to practically form a life sentence.  See *United States* v. *Anderson*, 59 F.3d 1323, 1327-1328 (D.C. Cir. 1995) (en banc).

In the 1999 Memorandum, Assistant Attorney General Robinson observed that the majority of the courts of appeals to address the issue "ha[d] reasoned that Section 924(c) emphasizes the relationship between the firearm and the underlying crime rather than the individual acts of using or carrying, and that, consequently, the predicate offense is the proper unit of prosecution."  Doc. 2667, at 35 (citing cases).  Two circuits, including the Eighth Circuit, see *United States* v. *Edwards*, 994 F.2d 417, 423-424 (8th Cir. 1993), had adopted the contrary approach and "held that a single

---

[3]     On December 21, 2018, the First Step Act of 2018 became law.  See Pub. L. No. 115-391, 132 Stat. 5194.  In Section 403(a) of the First Step Act, Congress deleted Section 924(c)(1)(C)'s reference to a "second or subsequent conviction" and replaced it with the phrase a "violation of this subsection that occurs after a prior conviction under this subsection has become final."  § 403(a), 132 Stat. 5221-5222.  The amended version of Section 924(c)(1)(C) applies to Jordan because he has not yet been sentenced for his offenses.  See § 403(b), 132 Stat. 5222.

predicate offense, such as a drug trafficking conspiracy, will support multiple Section 924(c) counts and consecutive sentences whenever the using or carrying occurs on different occasions."  Doc. 2667, at 35 (citing cases).

Observing that a pending petition for a writ of certiorari in *Wilkerson* v. *United States*, No. 98-9595 (cert. denied Oct. 12, 1999), raised the issue and highlighted this circuit conflict, the 1999 Memorandum instructed all U.S. Attorney's Offices to adopt the practice of basing each Section 924(c) count in an indictment upon a separate predicate offense—thus adhering to the majority view that the proper unit of prosecution for a Section 924(c) offense is the predicate drug crime.  Doc. 2667, at 36.

### 3.   Jordan's Motion To Enjoin the Government From Proceeding On Counts 2-12

On June 5, 2020, Jordan moved for an order barring the government, on grounds of judicial estoppel, from proceeding on the 11 counts brought under Section 924(j) for murder by using a firearm while engaged in a drug trafficking conspiracy. Doc. 2667.  In his view, because the United States persuaded the Supreme Court to refrain from resolving the circuit split on the proper "unit of prosecution" for a Section 924(c) offense by issuing the 1999 Memorandum, it should be estopped from charging defendants in violation of that memorandum.  *Ibid.*  The underlying premise of Jordan's argument is that a Section 924(j) murder charge "simply enhances the penalties required by [Section] 924(c) when the firearm causes death," *id.* at 7, and thus the "unit of prosecution" for a Section 924(j) offense is identical to the "unit of prosecution" for a Section 924(c) offense—*i.e.*, the unit of prosecution is the predicate

6

drug trafficking crime. *Id.* at 6-7. From that premise, he contends that the government "violated its own longstanding charging policy" articulated in the 1999 Memorandum by charging him with multiple Section 924(j) charges that are based on a single predicate drug trafficking offense. *Ibid.*

In response, the government clarified that "[t]he United States Department of Justice's position is that the 1999 memorandum upon which Jordan relies *does not* preclude multiple charges under § 924(j) based on multiple deaths, even if the deaths result from the same predicate drug conspiracy," and the 1999 Memorandum therefore provides no basis to estop the United States from charging Jordan with 11 counts of murder under Section 924(j)(1). Doc. 2752, at 4. The government explained that the 1999 Memorandum addresses only Section 924(c) offenses and that Section 924(j) is a separate offense because it requires another element that must be proved to a jury beyond a reasonable doubt—a killing by murder or manslaughter—in addition to the elements of Section 924(c). *Id.* at 7-8. The government further explained that the structure of Section 924 indicates that subsection (j) defines a separate offense because the penalties for causing death with a firearm do not appear in the list of penalties that follow the definition of the offense conduct in Section 924(c)(1)(A). *Id.* at 8. Finally, the government reiterated that regardless of whether the 1999 Memorandum covers Section 924(j) offenses, there could be no basis for judicial estoppel because internal Department of Justice policies do not confer substantive rights on criminal defendants. *Id.* at 9.

### 4.    The Declaration

When the 1999 Memorandum was issued more than 20 years ago, it stated: "Should you have any questions concerning this policy or its implementation, please contact John De Pue or Nancy Oliver of the Terrorism and Violent Crime Section." Doc. 2667, at 37.   Jordan's counsel contacted De Pue and Oliver, who retired from the Department of Justice in 2016 and 2013, respectively, to ask whether the government's decision to charge Jordan with 11 counts of murder by using a firearm while engaged in a drug trafficking conspiracy under Section 924(j) is consistent with the 1999 Memorandum.   See Doc. 2944, at 3-4.   On January 14, 2021, Jordan submitted a declaration from De Pue and Oliver (the declarants).   Doc. 2944.

The declarants offered the opinion that Section 924(j) is "merely [an] aggravating factor[]" that authorizes an enhanced penalty for a violation of Section 924(c) and "does not create a new stand-alone offense."   Doc. 2944, at 11. Accordingly, in the declarants' view, the government's decision to charge Jordan with multiple counts of murder under Section 924(j) tied to a single predicate drug trafficking offense is inconsistent with the "unit of prosecution directive" in the 1999 Memorandum.   *Id.* at 10-11.   The declarants suggest that the United States' position in its response to Jordan's motion that Section 924(j) is a separate offense, and not merely a sentencing enhancement for a Section 924(c) offense, is "erroneous" and simply a "view . . . expressed by the prosecutor in this case," but "does not reflect the position of the Department of Justice."   *Id.* at 11-12.   This brief is submitted in response to that declaration.

8

## LEGAL ANALYSIS

The prosecutors correctly stated the position of the Department of Justice:  The 1999 Memorandum does not preclude multiple charges under § 924(j) based on multiple deaths, even if the deaths result from the same predicate drug conspiracy. Because a murder or manslaughter offense under Section 924(j) requires the government to prove an additional element in every case beyond the elements of Section 924(c)—that the defendant used a firearm to kill a person—it does not present the same "unit of prosecution" issue that can arise in Section 924(c) cases.  And in any event, even if the government's charging decision were inconsistent with the 1999 Memorandum, it would not provide a basis for dismissing Counts 2-12 because an internal charging policy does not give substantive rights to criminal defendants.

**THE DECLARATION DOES NOT ESTABLISH THAT THE UNITED STATES VIOLATED ANY CHARGING POLICY OR THAT JORDAN IS ENTITLED TO DISMISSAL OF COUNTS 2 THROUGH 12**

### A.  The 1999 Memorandum Does Not Prohibit Charging Multiple Section 924(j) Offenses Using A Single Predicate Drug Trafficking Crime

The 1999 Memorandum does not prevent prosecutors from charging multiple counts of Section 924(j) murder based on a single drug trafficking conspiracy.  The 1999 Memorandum instructs prosecutors "to adopt the practice of basing each Section 924(c) count in an indictment upon a separate predicate offense."  Doc. 2667, at 36. It does not instruct prosecutors with respect to charging Section 924(j) offenses, and

its rationale for instructing prosecutors to use the predicate drug crime as the "unit of prosecution" for Section 924(c) does not apply to Section 924(j) offenses.[4]

1.     There is no question that Section 924(j) is explicitly tied to Section 924(c). A Section 924(j) murder is a murder that occurs using a firearm "in the course of a violation of [Section] 924(c)."  18 U.S.C. 924(j)(1).  Accordingly, each Section 924(j) murder count in the indictment alleges a violation of Section 924(c) before adding additional allegations of murder that bring each offense within the scope of Section 924(j).  Doc. 1990, at 3-24.  That does not mean that the "unit of prosecution" for a Section 924(c) offense must be the same for a Section 924(j) offense.  The 1999 Memorandum was drafted to address an ambiguity in the language of Section 924(c) that does not appear in Section 924(j).

In the 1990s, the question that had divided the circuits with respect to Section 924(c) was "the meaning of the phrase 'whoever, during and in relation to any crime of violence or drug trafficking crime . . . *uses* or *carries* a firearm.'"  *United States* v. *Anderson*, 59 F.3d 1323, 1326 (D.C. Cir. 1995) (en banc).  As the D.C. Circuit explained in *Anderson*, that language could be interpreted to mean "either that (1) *each*

---

[4]     Because the Eighth Circuit was on the minority side of the circuit conflict that precipitated the 1999 Memorandum, binding circuit precedent permits the government to charge multiple violations of Section 924(c) for separate uses, carriages, or possessions of a firearm during a single predicate drug conspiracy.  See *United States* v. *Edwards*, 994 F.2d 417, 423-424 (8th Cir. 1993).  The government, however, followed the instruction in the 1999 Memorandum and charged Jordan with only one Section 924(c) count (Count 13), even though the allegations supporting that count describe five instances on which he possessed a firearm in furtherance of the predicate drug trafficking conspiracy alleged in Count 1.  See Doc. 1990, at 25.

*time* a defendant uses [or carries] a firearm in relation to a [drug trafficking] crime he commits a separate crime, or (2) that if during the course of a [drug trafficking] crime a defendant uses [or carriers] a firearm *at any time*, he commits a separate crime." *Ibid.* (internal quotation marks omitted); see *United States* v. *Lindsay*, 985 F.2d 666, 675 (2d Cir. 1993) ("It is not clear that [C]ongress sought to punish a defendant separately for every firearm used during a single drug-trafficking offense, rather than punish the defendant for the general act of using firearms in relation to the underlying drug offense."). In other words, Section 924(c) was "ambiguous as to the appropriate unit of prosecution." *Lindsay*, 985 F.2d at 675.

The unit of prosecution for a criminal offense is a matter of statutory construction that derives from the Double Jeopardy Clause. See *Blockburger* v. *United States*, 284 U.S. 299, 304 (1932); *Brown* v. *Ohio*, 432 U.S. 161, 166 (1997). If Congress intended only to punish a defendant for the general act of using or carrying firearms during a drug trafficking crime, then two convictions for using or carrying a firearm during one drug trafficking crime would punish the defendant twice for the same offense. See *Anderson*, 59 F.3d at 1335 (Ginsburg, J., dissenting) (defendant argued that he could not be convicted under Section 924(c) for more than one use of a firearm in connection with a single drug trafficking conspiracy "to avoid violating double jeopardy principles"); see *United States* v. *Privette*, 947 F.2d 1259, 1262-1263 (5th Cir. 1991) (concluding that each Section 924(c) offense must be linked to a separate drug trafficking crime "to avoid violating double jeopardy principles").

A majority of circuits to consider the issue had determined that the second interpretation was correct, or that the rule of lenity required the second interpretation due to ambiguity.  Doc. 2667, at 35.  The D.C. Circuit observed that use of the words "use[]" *or "carr[y]"* in Section 924(c), the latter of which "does not easily lend itself to a meaning that suggests a discrete act" but instead "implies a continuing activity," indicated that Congress likely did not intend for a defendant to be charged with multiple Section 924(c) offenses during one predicate drug trafficking crime.  *Anderson*, 59 F.3d at 1326-1327.  The court observed that even the verb "use" "has varying meanings," *id.* at 1326 (citing *United States* v. *Bailey*, 36 F.3d 106, 114-115 (D.C. Cir. 1994 (en banc), *rev'd*, 516 U.S. 137 (1995)), and that the case for firearm use as the unit of prosecution "would be stronger if the statute employed 'use' as a noun, such that 'a use' of a gun in relation to a drug crime would be a violation of § 924(c)(1)."  *Id.* at 1326.

Moreover, because each Section 924(c) conviction after the first one required a mandatory consecutive 25-year sentence, "three or four 'uses' or 'carries' during one underlying drug crime . . . would, as a practical matter, bring a life sentence." *Anderson*, 59 F.3d at 1328.  Courts interpreting the statute believed that if Congress had intended for a separate Section 924(c) offense to occur every time a defendant carried a firearm during a drug trafficking conspiracy, it would have specified that each use or carry of a firearm was a separate offense.  *Id.* at 1327; *Lindsay*, 985 F.2d at 674 ("[I]f [C]ongress intended to impose such a draconian penalty by requiring that a defendant

be convicted and consecutively sentenced for each firearm connected with a single drug-trafficking crime, surely it would have said so in clear language").

2.    None of the cases cited in the 1999 Memorandum discusses Section 924(j), which uses different language.  It provides that "[a] person who, in the course of a violation of subsection (c), causes the death of a person through the use of a firearm, shall" be punished by death or a term of imprisonment if the killing is a murder as defined in Section 1111, and punished as provided in Section 1112 if the killing is manslaughter.  18 U.S.C. 924(j).  That language is naturally read to mean that "caus[ing] [a] death" is the unit of prosecution, and each time the defendant kills a person using a firearm while engaged in a drug trafficking crime, he commits a separate offense.

Killing a person is not a "continuing offense" like carrying a firearm; it is a discrete act that can easily be parsed into multiple separate offenses.  Moreover, Section 924(j) limits the type of underlying Section 924(c) offense to those where the defendant "uses" (as opposed to carries or possesses) a firearm.  See 18 U.S.C. 924(j)(1) (Section 924(j) murder occurs where "in the course of a violation of [Section 924(c)]," the defendant "causes the death of a person through the *use* of a firearm").  And unlike Section 924(c), it "employ[s] 'use' as a noun," which suggests that Congress meant to punish discrete acts.  *Anderson*, 59 F.3d at 1326 (suggesting that if Section 924(c)(1) had employed "use" as a noun, such that "'a use' of a gun in relation to a drug crime would be a violation of § 924(c)(1)," the unit of prosecution likely would be the firearm use rather than the underlying drug trafficking crime).  Accordingly, although every

Section 924(j) offense necessarily involves a violation of Section 924(c), a Section 924(j) offense does not encompass the type of Section 924(c) offense that "implies a continuing activity," which served to create ambiguity about the unit of prosecution for Section 924(c).  *Id*. at 1326-1327; *Lindsay*, 985 F.2d at 675.

Moreover, multiple convictions and sentences for murder or manslaughter under Section 924(j) do not create the concern that courts in the 1990s shared about multiple convictions under Section 924(c).  The courts of appeals were concerned that if the use or carriage of a firearm was the unit of prosecution for Section 924(c), the sentencing scheme would bring a life sentence based on three or four uses or carries, and the courts expected more clarity from Congress before assuming it intended that "draconian" penalty.  *Lindsay*, 985 F.2d at 674; see *Anderson*, 59 F.3d at 1328.  Section 924(j) does not raise the same concern; in fact, it raises the opposite concern.

The result for which Jordan argues "would lead to the conclusion that . . . all but the first killing committed in the course of [a drug] conspiracy would not be covered by [Section 924(j)]."  *United States* v. *Curtis*, 324 F.3d 501, 509 (7th Cir. 2003).  In rejecting the same argument Jordan is making here, the Seventh Circuit stated that it "w[ould] not presume that Congress intended such an outcome without far more explicit statutory language."  *Ibid*.  The declarants do not attempt to explain why Congress would intend for 11 individual murders with different victims to be treated as one unit of prosecution.

14

**B.    The Declarants' Contrary Arguments Lack Merit**

1.    Declarants' view that the 1999 Memorandum requires prosecutors to treat the unit of prosecution for a Section 924(j) murder as the drug trafficking predicate, rather than the murder itself, is based on their understanding that Section 924(j) is "merely [an] aggravating factor[]" that authorizes an enhanced penalty for a violation of Section 924(c) and "does not create a new stand-alone offense."  Doc. 2944, at 11.  That view is wrong.

a.    Declarants' view is based on an outdated understanding of the statute. Although the United States still follows the 1999 Memorandum and did so in this case, see note 4, *supra*, the guidance was written before *Apprendi* v. *New Jersey*, 530 U.S. 466 (2000), which changed the background understanding of sentencing enhancements. See *id.* at 490 (holding that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury" and proved beyond a reasonable doubt); see *Alleyne* v. *United States*, 570 U.S. 99, 103 (2013) (holding that *Apprendi* applies equally to facts (other than a prior conviction) that increase a defendant's mandatory-minimum sentence, and those facts are therefore "elements" of the crime that must be submitted to a jury).

Section 924(j) covers different and far more severe conduct than Section 924(c). It requires a killing by murder or manslaughter using a firearm, and in the case of murder the penalty escalates to a potential death sentence.  18 U.S.C. 924(j)(1).  For each Section 924(j) offense, the government must prove a separate instance of murder or manslaughter to the jury beyond a reasonable doubt.  See *Apprendi*, 530 U.S. at 490;

*Ring* v. *Arizona*, 536 U.S. 584, 589 (2002) ("Capital defendants, no less than noncapital defendants, . . . are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment.").  Put simply, a defendant who murders another person using a firearm has committed a new crime beyond the underlying Section 924(c) offense.

But it is not the mere fact that the government must prove each killing beyond a reasonable doubt that makes Section 924(j) a separate offense, rather than a sentence enhancement for a Section 924(c) offense, as the declarants contend.  See Doc. 2944, at 12-13 (stating that the government's "separate offense" argument "appears to be based upon the premise that, to obtain an enhanced sentence under Section 924(j), the government must prove beyond a reasonable doubt to the satisfaction of the fact-finder that the defendant committed a homicidal act").  In that respect, it is helpful to contrast Section 924(j) as an aggravated Section 924(c) offense, with Section 924(c)(1)(B) as an aggravated Section 924(c) offense.

Section 924(c)(1)(B) increases the mandatory minimum sentence for a Section 924(c) offense if the defendant possessed a certain type of especially dangerous firearm during the commission of his Section 924(c) offense.  See 18 U.S.C. 924(c)(1)(B)(i) and (ii).  To obtain this increased mandatory minimum or "sentence enhancement," the government must prove to the jury beyond a reasonable doubt that the defendant possessed a certain type of firearm.  See *Alleyne*, 570 U.S. at 103 (any fact that increases the mandatory minimum is an element of the crime that must be submitted to the jury).  However, nothing about this type of sentencing enhancement changes the unit of

prosecution for the Section 924(c) offense itself.  Section 924(c)(1)(B) could therefore be viewed as a sentencing enhancement for a Section 924(c) offense, even though the government must prove the aggravating circumstance beyond a reasonable doubt as an additional element of the enhanced offense.

In contrast, although Section 924(j) is certainly an aggravated version of Section 924(c) because it always occurs "in the course of a violation of [Section 924(c)]" and it authorizes a harsher penalty, see 18 U.S.C. 924(j), Section 924(j) employs language that indicates Congress intended to punish each "use" of a firearm to kill someone during a drug trafficking crime as the unit of prosecution.  See pp. 9-14, *supra*.  Section 924(j) is therefore more properly viewed as a separate offense, rather than a sentencing enhancement for a Section 924(c) offense.

b.    Declarants observe that the Eighth Circuit has described Section 924(j) as "an additional aggravating punishment for the scheme already set out in [Section] 924(c)."  Doc. 2944, at 22 (quoting *United States* v. *Allen*, 247 F.3d 741, 769 (8th Cir. 2001), vacated on other grounds, 536 U.S. 953 (2002)); *id.* at 21-25.  The Eighth Circuit in *Allen* was not considering the proper unit of prosecution for Section 924(j), and its decision has no bearing on the issue presented in Jordan's motion to dismiss.

In *Allen*, the Eighth Circuit addressed whether Section 924(c)'s cumulative punishment scheme for a Section 924(c) offense and its underlying predicate offense, see 18 U.S.C. 924(c)(1) (stating that the sentence imposed for a Section 924(c) offense shall be "in addition to the punishment provided for [the predicate] crime of violence or drug trafficking crime"), applied to Section 924(j) offenses.  *Allen*, 247 F.3d at 768.

17

If Section 924(c)'s cumulative punishment scheme applied, then a defendant could be convicted and sentenced under both Section 924(j) and the predicate crime of violence or drug trafficking offense, even though the predicate crime is a lesser-included offense of the Section 924(j) offense and would therefore present a double jeopardy problem under *Blockburger* unless Congress clearly intended to impose cumulative sentences for violations of each statute. *Allen*, 247 F.3d at 768-769.

The Eighth Circuit concluded that punishment under Section 924(j) may be imposed "in addition to" the punishment for its predicate drug crime under the cumulative punishment scheme of Section 924(c) because: (i) Section 924(j) incorporates Section 924(c) by reference and does not disclaim its cumulative punishment scheme; (ii) Section 924(j) is an aggravated version of Section 924(c) and not applying the cumulative punishment scheme would lead to the "odd result that a defendant convicted under § 924(c) is subject to an additional consecutive sentence only in situations that do not result in a death caused by use of the firearm"; and (iii) the predicate offense and Section 924(j) were designed to punish different conduct. *Allen*, 247 F.3d at 769.

The Eighth Circuit's conclusion that Section 924(j) is subject to Section 924(c)'s cumulative punishment scheme—a holding with which the United States agrees— does not necessitate the conclusion that offenses under Section 924(j) and 924(c) must also have identical units of prosecution when it comes to charging multiple violations. Congress used different language to define each offense and courts must analyze the language defining each offense separately.

18

c.    The outdatedness of the declarants' analysis is reinforced by their reference to a superseded version of the Department of Justice's *Federal Firearms Manual*. The declarants suggest that the United States' position set forth in its response to Jordan's motion—that Section 924(j) is not a sentencing enhancement for a Section 924(c) offense, but instead defines a separate offense—is an erroneous "view . . . expressed by the prosecutor in this case" that "does not reflect the position of the Department of Justice." Doc. 2944, at 12.  They are wrong about that.

In support of their contention that Section 924(j) is a sentencing enhancement for a Section 924(c) offense, the declarants cite an outdated version of the *Federal Firearms Manual*, which refers to Section 924(j) as a "sentence enhancement" to Section 924(c).  See Doc. 2944, at 12 (citing *Federal Firearms Manual* § 6.28 (4th ed. 2009)).  There are several problems with that reference.  Although Jordan attached several pages of the *Federal Firearms Manual* to his motion to dismiss, see Doc. 2667, at 45-50 (reproducing *Federal Firearms Manual* § 6.24 (5th ed. 2010)), it is not a public document.  *See id*. at 45 (instructing individuals receiving the *Federal Firearms Manual* "to treat it confidentially.").  Moreover, the *Federal Firearms Manual* explicitly states that it does not "create any substantive or procedural rights, privileges, or benefits enforceable in any administrative, civil, or criminal matter." *Ibid.* (citing *United States* v. *Caceres*, 440 U.S. 741 (1979)).

But more importantly, the *Federal Firearms Manual* was updated after the declarants retired in order to reflect the Department's position that Section 924(j) is a

separate offense from Section 924(c), not a sentencing enhancement.[5]  The declarants'
suggestion that the prosecutor in this case has erroneously taken a position contrary to
the Department's position, see Doc. 2944, at 12, is therefore unfounded.

2.     The declarants advance several statutory construction arguments in
support of their view that Section 924(j), as an "aggravated form of a Section 924(c)
violation," must be subject to the same unit of prosecution for Section 924(c) offenses
set forth in the 1999 Memorandum.  Those arguments lack merit.

a.     According to the declarants, if the murder, rather than the Section 924(c)
offense, were the "gravamen" of a Section 924(j) offense, the requirement for the
murder to occur in the course of a violation of Section 924(c) "would have virtually
no work to do."  Doc. 2944, at 15-16.  They contend that the "canon against
surplusage" prohibits that result.  *Ibid.*  As the declarants acknowledge, however, the
requirement that a murder occur during the course of a Section 924(c) violation—*i.e.*,
while the defendant is using a firearm during or in relation to a drug trafficking crime—
provides a basis for that murder to be prosecuted in federal court.  *Ibid.*  The reference
to Section 924(c) is not surplusage.

b.     The declarants further contend that under the *in pari materia* canon of
construction, Sections 924(c) and 924(j) should be construed in the same manner
because they address the same subject matter.  Doc. 2944, at 16-19.  That argument
ignores the difference in statutory language discussed above.  See pp. 9-14, *supra*.  Just

---

[5]     The Sixth Edition of the *Federal Firearms Manual*, like the Fifth Edition, is for internal
use only and confers no rights on defendants.

because both provisions address crimes committed with firearms, that does not mean the unit of prosecution must be the same for both offenses—especially where one provision uses language that raises concerns about duplicitous convictions for continuing offenses, while the other does not.  Indeed, the Seventh Circuit sided with the majority of courts in the circuit split addressed by the 1999 Memorandum, holding that a single drug conspiracy could give rise to only one Section 924(c) conviction.  See *United States* v. *Cappas*, 29 F.3d 1187, 1191 (7th Cir. 1994).  But it held in *Curtis* that multiple Section 924(j) convictions can be tied to a single predicate drug conspiracy, confirming that the unit of prosecution need not be the same for both offenses.  324 F.3d at 509.[6]

c.     The declarants further contend that if there is "uncertainty" about whether Section 924(j) is an aggravated form of Section 924(c) or a separate offense, the rule of lenity requires the court to find that it is an aggravated form of Section 924(c).  Doc. 2944, at 20.  The rule of lenity does not apply here.

i.     The declarants do not identify any ambiguity in the language of Section 924(j).  See *Dean* v. *United States*, 556 U.S. 568, 577 (2009) (rule of lenity applies only

---

[6]     Declarants observe that Section 924(j) is similar to some subsections of Section 924(c) that authorize additional penalties for "brandishing" or "discharging" a firearm, or for committing murder or manslaughter through the use of armor piercing ammunition.  Doc. 2944, at 17-18 (citing 18 U.S.C. 924(c)(1)(A)(ii), (iii) and 924(c)(5)).  That observation underscores that the United States may in the future wish to modify the 1999 Memorandum's guidance on Section 924(c) for violations that can always be parsed into separate acts, such as discharging a gun.  But those provisions are not at issue here.  The 1999 Memorandum instructs prosecutors to base each Section 924(c) count in an indictment upon a separate predicate offense, Doc. 2667, at 36, and the United States followed that guidance in this case.

where a "grievous ambiguity" in a statute remains after all canons of instructions have been employed).   Regardless of whether Section 924(j) is viewed as an aggravated Section 924(c) offense or a separate offense, its language is unambiguous:   A person violates the statute when he causes the death of another by murder or manslaughter through the use of a firearm during or in relation to a drug trafficking offense. 18 U.S.C. 924(j).   The ambiguous language that courts had identified in Section 924(c) with respect to "us[ing]" or carr[ying]" a firearm does not appear in Section 924(j).

ii.   Declarants further contend, in arguing that the rule of lenity supports their position, that Section 924(j) must be viewed as an aggravated Section 924(c) offense, rather than a separate offense, in order for the Double Jeopardy Clause to prohibit cumulative punishment under both statutes for the same conduct.   Doc. 2944, at 20-21.   That concern is unfounded.

Under the test in *Blockburger*, Section 924(c) is a lesser-included offense of Section 924(j).   See 284 U.S. at 304.   Although a defendant may be convicted and sentenced for lesser and greater offenses where Congress clearly intended to impose those punishments, see, *e.g.*, *Missouri* v. *Hunter*, 459 U.S. 359, 366-367 (1983), nothing in the statutory text indicates that Congress clearly intended to subject a defendant who causes a death through a Section 924(c) violation to be subject to separate convictions and sentences under Section 924(c) and Section 924(j) for the same use of a firearm.   See *United States* v. *Gonzales*, 841 F.3d 339, 357-358 (5th Cir. 2016); *United States* v. *Garcia-Ortiz*, 657 F.3d 25, 28-29 (1st Cir. 2011); see *United States* v. *Wilson*, 579 Fed. Appx. 338, 348 (6th Cir. 2014) (unpublished).   Jordan was not charged with a

separate Section 924(c) count that corresponded to each Section 924(j) count.  See Doc. 1990, at 3-24.

iii.    For their final point in support of applying the rule of lenity, declarants contend that if homicide, rather than a Section 924(c) firearm violation, is viewed as the gravamen of a Section 924(j) offense, a defendant charged with multiple Section 924(j) murders could not take advantage of Section 403(a) of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5221-5222, which provides that the recidivist enhancements in Section 924(c)(1)(C) do not apply unless the defendant has a prior conviction "under this subsection" that has become final.  18 U.S.C. 924(c)(1)(C).  See Doc. 2944, at 21; see also note 3, *supra*.  But viewing Section 924(j) as a separate offense for the purpose of defining the unit of prosecution does not mean that a Section 924(j) conviction is no longer a conviction "under this subsection" for purposes of Section 924(c)'s sentencing scheme.

Every Section 924(j) offense requires an underlying violation of Section 924(c), and the phrase "in this subsection" throughout Section 924(c)'s sentencing scheme "serves a functional—as opposed to literal—purpose, by identifying those sentences imposed *as a consequence of* a subsection (c) offense."  *United States* v. *Berrios*, 676 F.3d 118, 142 (3d Cir. 2012).  Sections 924(c) and (j) "jointly provide the legal basis for the sentence" imposed under Section 924(j), which is why the consecutive-sentence mandate of Section 924(c)(1)(A) applies to a sentence imposed under Section 924(j).  *Id.* at 143; see *United States* v. *Bran*, 776 F.3d 276, 281 (4th Cir. 2015); *United States* v. *Dinwiddie*, 618 F.3d 821, 837 (8th Cir. 2010).

The same would be true of the recidivist protections provided in Section 924(c)(1)(C).  A Section 924(j) violation is necessarily a violation of Section 924(c), and the cases cited above demonstrate that a prior conviction under Section 924(j) is a "conviction under this subsection" for purposes of Section 924(c)'s sentencing provisions.  The First Step Act's amendment to the recidivism provision in Section 924(c)(1)(C) would therefore apply to Section 924(j) convictions as well.  But the fact that the statutes are linked in this and other ways does not mean the unit of prosecution for each offense must be identical.

## C.   Jordan Cannot Rely on the 1999 Memorandum

Even if the government had charged this case in violation of Department policy, which it did not, dismissal of Counts 2 to 12 would not be warranted.  As the United States pointed out in its response to Jordan's motion to dismiss, Doc. 2752, at 9, the Eighth Circuit has repeatedly held that criminal defendants have no enforceable rights under internal Department of Justice policy.  See, *e.g.*, *United States* v. *Lee*, 274 F.3d 485, 492-493 (8th Cir. 2001); *In re United States*, 197 F.3d 310, 315 (8th Cir. 1999); *Delay* v. *United States*, 602 F.2d 173, 178-179 (8th Cir. 1979); see also *Caceres*, 440 U.S. at 749-755.

When uncertainty develops in the interpretation of federal laws, the Department often provides internal guidance to prosecutors on what position to take.  It cannot be the case the United States is forever barred from changing its position after it gives internal guidance to its prosecutors.  The United States frequently updates its guidance in response to changes in the legal landscape.  It is not prohibited by concepts of

24

judicial estoppel from altering its guidance or, as here, deciding that its guidance does not apply in the circumstances presented.

## CONCLUSION

The United States respectfully requests that this Court deny Jordan's motion to dismiss in its entirety.

Respectfully submitted,

<u>s/ Ann O'Connell Adams</u>

SAYLER A. FLEMING
    United States Attorney
    Eastern District of Missouri

THOMAS REA
ERIN GRANGER
Assistant United States Attorneys

SONIA V. JIMENEZ
    U.S. Department of Justice
    Criminal Division, Capital Case
    Section

NICHOLAS L. MCQUAID
    Acting Assistant Attorney General

ROBERT A. ZINK
    Acting Deputy Assistant Attorney
    General

ANN O'CONNELL ADAMS
    Criminal Division, Appellate Section
    U.S. Department of Justice
    950 Pennsylvania Ave. NW, Rm. 1252
    Washington, DC 20530
    (202) 514-4086
    ann.adams@usdoj.gov

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on March 25, 2021, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic system upon all parties and counsel of record.

/s/ Ann O'Connell Adams
ANN O'CONNELL ADAMS